# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP558-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Appellant-Cross-Respondent-Petitioner, |
| |        v. |
| | Joel M. Hurley, |
| |        Defendant-Respondent-Cross-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 354 Wis. 2d 622, 848 N.W.2d 903
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | March 31, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 8, 2015 |
| | |
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Marinette |
|   JUDGE: | David G. Miron |
| | |
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, C.J., BRADLEY J. dissent. (Opinion Filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-appellant-cross-respondent-petitioner, the cause was argued by *Jacob J. Wittwer*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

    For the defendant-respondent-cross-appellant, the cause was argued by *Craig S. Powell* and *Kohler & Hart, S.C.*, Milwaukee. The briefs were filed by *Craig S. Powell.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP558-CR
(L.C. 2011CF90)
No.

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Appellant-Cross-Respondent-Petitioner,**

    **v.**

**Joel M. Hurley,**

    **Defendant-Respondent-Cross-Appellant.**

**FILED**

MAR 31, 2015

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded to the circuit court with the instruction to reinstate the judgment of conviction.*

¶1 MICHAEL J. GABLEMAN, J. We review an unpublished per curiam decision of the court of appeals[1] reversing in part two decisions of the Marinette County circuit court.[2] In an amended

---

[1] State v. Hurley, No. 2013AP558-CR, unpublished slip op., (Wis. Ct. App. Mar. 18, 2014) OPINION WITHDRAWN AND REISSUED (May 6, 2014).

[2] The Honorable David G. Miron, presiding.

criminal complaint ("amended complaint") filed on July 29, 2011, the Marinette County District Attorney's Office charged Joel M. Hurley ("Hurley") with one count of engaging in repeated acts of sexual assault of the same child under Wis. Stat § 948.025(1).[3] The amended complaint detailed how Hurley sexually assaulted his stepdaughter, M.C.N., 26 times between 2000 and 2005.  M.C.N. was between 6 and 11 years old when the assaults occurred.

¶2   Prior to trial, the State filed a motion to admit other-acts evidence under Wis. Stat. § 904.04(2)(a) (2011-12). The State sought to admit evidence that Hurley repeatedly sexually assaulted his younger sister, J.G., 25 years prior to trial.  J.G. stated that the assaults occurred when Hurley was between the ages of 12 and 14 years old, and J.G. was between the ages of 8 and 10 years old.  The circuit court granted the State's motion and admitted the other-acts evidence for the

---

[3]   The amended complaint alleged that Hurley assaulted M.C.N. between 2000 and 2005.  While the applicable statutes, Wis. Stat. §§ 948.02 and 948.025, were amended during this period, the underlying crime with which Hurley was charged remained materially the same.  Under each version of § 948.025, any person who committed three of more acts of first degree sexual assault of a child, against the same child, was guilty of a class B felony.  First degree sexual assault of a child was defined as sexual contact or sexual intercourse with a person who has not attained the age of 13 years that did not result in great bodily harm to the child.  M.C.N. was under the age of 13 years during the charging period.  Although it is unclear under which version the Marinette County District Attorney's Office charged Hurley, the facts alleged in the complaint satisfy each version.  All subsequent references to the Wisconsin Statutes are to the 2005-06 version unless otherwise indicated.

2

purpose of establishing Hurley's <u>modus</u> <u>operandi</u> (method of operation) and opportunity.

¶3    At trial, Hurley testified in his own defense and his attorney asked him twice whether he recalled the assaults alleged by J.G.  Hurley answered that he did not recall the assaults.  During closing argument, the prosecutor stated, "when the defendant testified, he was asked by his [] attorney regarding [J.G.] he said well, do you recall any of these incidents with [J.G.] ever happening?  And his answer was no. The question wasn't did you do this or not, it was do you recall?  That's different than it didn't happen."  The jury found Hurley guilty of one count of engaging in repeated acts of sexual assault of the same child and the circuit court sentenced him to 25 years imprisonment consisting of 18 years of initial confinement and 7 years of extended supervision.

¶4  Subsequently, Hurley filed a post-conviction motion arguing that his trial counsel was ineffective for failing to move to dismiss the amended complaint on due process grounds. Alternatively, Hurley argued that the amended complaint was deficient and constituted plain error[4] requiring reversal. Hurley also argued trial counsel was ineffective for failing to object to the remarks made by the prosecutor during closing argument.  Finally, Hurley argued that the prosecutor's remarks

---

[4] Plain error is "'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'"  <u>State v. Jorgensen</u>, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation omitted).

during closing argument required a new trial in the interest of justice.

¶5 The circuit court agreed with Hurley that the prosecutor's statement was improper and ordered a new trial in the interest of justice. The circuit court denied Hurley's other grounds for relief.

¶6 The State and Hurley filed cross-appeals with the court of appeals. The State argued the circuit court erroneously exercised its discretion by granting a new trial in the interest of justice. Hurley argued that his trial counsel was ineffective for failing to move to dismiss the amended complaint on due process grounds. Alternatively, Hurley argued that the amended complaint was deficient and constituted plain error requiring reversal. Hurley also argued that the circuit court erroneously exercised its discretion in admitting the other-acts evidence.

¶7 The court of appeals agreed with Hurley and concluded that the amended complaint failed to provide adequate notice, and thus violated Hurley's due process rights, and that the circuit court erroneously exercised its discretion in admitting the other-acts evidence. Hurley, No. 2013AP558-CR, ¶¶38, 54. The court of appeals did not address the remarks made by the prosecutor during his closing argument.

¶8 Three issues are presented for our consideration: 1) whether the amended complaint and information charging Hurley with one count of engaging in repeated acts of sexual assault of the same child provided adequate notice to satisfy Hurley's due

4

process right to plead and prepare a defense; 2) whether the circuit court erroneously exercised its discretion in admitting other-acts evidence that Hurley had repeatedly sexually assaulted his sister, J.G., when she was between the ages of 8 and 10 years old and he was between the ages of 12 and 14 years old; and 3) whether the circuit court erroneously exercised its discretion in ordering a new trial in the interest of justice because of the prosecutor's remarks during closing argument.

¶9 First, we hold that the amended complaint and information[5] provided adequate notice and thus did not violate Hurley's due process right to plead and prepare a defense. Second, we hold that the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence. Finally, we hold that the circuit court erroneously exercised its discretion in granting a new trial in the interest of justice. We therefore reverse the court of appeals and remand to the circuit court with the instruction that the judgment of conviction be reinstated.

---

[5] "The information is the [charging document] . . . to which [a] defendant must enter a plea." Pillsbury v. State, 31 Wis. 2d 87, 93, 142 N.W.2d 187, 191 (1966). "A defendant has the benefit of both the factual allegations required in the complaint and the final statutory charges alleged in the information." State v. Copening, 103 Wis. 2d 564, 576, 309 N.W.2d 850 (Ct. App. 1981). However, "[t]he factual allegations relied on by the state which satisfy the elements of the crime are more likely found in the complaint. The facts recited in the complaint need not be repeated in the information." Id. at 577. Thus, when discussing the sufficiency of the factual allegations against Hurley, we refer to the amended complaint.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶10 On July 29, 2011, the Marinette County District Attorney's Office filed an amended complaint charging Hurley with one count of engaging in repeated acts of sexual assault of the same child, contrary to Wis. Stat. § 948.025(1),[6] for assaulting his stepdaughter, M.C.N. on three or more occasions "on and between" 2000 and 2005.

---

[6] Wisconsin Stat. § 948.025 provides, in relevant part:

(1) Whoever commits 3 or more violations under s. 948.02 (1) or (2) within a specified period of time involving the same child is guilty of:

 . . .

(ar) A Class B felony if fewer than 3 of the violations were violations of s. 948.02 (1) (a) but at least 3 of the violations were violations of s. 948.02 (1) (a) or (b).

Wisconsin Stat. § 948.025 does not require proof of an exact offense date and was

enacted to address the problem that often arises in cases where a child is the victim of a pattern of sexual abuse and assault but is unable to provide the specifics of an individual event of sexual assault. The purpose of the legislation was to facilitate prosecution of offenders under such conditions.

State v. Nommensen, 2007 WI App 224, ¶15, 305 Wis. 2d 695, 741 N.W.2d 481. A jury is required to agree unanimously only to the fact that three separate assaults occurred, not to which three assaults occurred. State v. Johnson, 2001 WI 52, ¶¶14-15, 243 Wis. 2d 365, 627 N.W.2d 455. "In other words, it is the course of sexually assaultive conduct that constitutes the primary element of this offense, about which the jury must be unanimous (the second and third elements are the age of the victim and the timing of the acts). . . . Unanimity is explicitly not required regarding the individual acts of sexual assault." Id., ¶16.

¶11 According to the amended complaint, Hurley and M.C.N.'s mother were married sometime in 2000 and divorced in November 2006. The family lived together at a residence in Peshtigo, Wisconsin. According to M.C.N. the assaults began shortly after the marriage in 2000, when she was 6 years old, and lasted until 2005, when she was 11 years old. All the sexual assaults occurred at the family residence.

¶12 According to the amended complaint, M.C.N. explained that the assaults began "as the defendant played a type of game with her." When M.C.N.'s mother was away from the residence, Hurley chased M.C.N. around the house and removed her clothing when he caught her. According to the amended complaint, the chasing game happened one time.

¶13 Hurley then started coming into M.C.N.'s bedroom at night and would get into bed with her. Hurley then placed his hand into M.C.N.'s pajama bottoms and inserted his fingers inside her vagina. The amended complaint relates that M.C.N. said Hurley did this "approximately five times during the time she lived with him." The amended complaint also stated that during these incidents Hurley tried "to get her to touch him, which M.C.N. stated she did during one of these encounters." M.C.N. was unsure whether her mother was home during these assaults.

¶14 Around the same time that the nighttime assaults began, Hurley began weighing M.C.N. while she was naked when she got home from school. During this game Hurley "would have her take her clothing off and would put her on his shoulders to take

her into the bathroom" where he would weigh her on a scale. M.C.N. said that Hurley did this frequently, in excess of 20 times, when she was between the ages of 6 and 11 years old. M.C.N. stated that during these incidents Hurley "would not go any further than have her naked on his shoulders and weigh her."

¶15 During one of the "last occasions" Hurley got into the shower with M.C.N. after school. M.C.N. stated she was naked but Hurley had on his underwear. Hurley asked her "you're not going to tell your mother are you?" M.C.N. replied "yes," which caused Hurley to leave the shower.

¶16 M.C.N. stated these incidents occurred until 2005, one year prior to the 2006 divorce. M.C.N. estimated Hurley weighed her naked in excess of 20 times, placed his fingers inside of her vagina approximately five times, and forced her to touch his genitals one time while he was touching her genitals.

¶17 M.C.N. stated that she disclosed the assaults to a few friends in 2010 and decided to disclose the assaults to her mother in September 2010 when she was 15 years old after Hurley moved to Indiana.

¶18 Before trial, the State filed a motion to introduce other-acts evidence that Hurley had repeatedly sexually assaulted his younger sister, J.G., over the course of two years, from 1984 to 1986, when she was between the ages of 8 and 10 years old, and he was between the ages of 12 and 14 years old. At the motion hearing J.G. testified that Hurley repeatedly sexually assaulted her. J.G. testified that, while their parents were away, Hurley asked her to remove her clothes,

8

put on a fur coat, and meet him in their parents' bedroom. When J.G. entered, Hurley was naked under the covers and asked J.G. to slowly perform a strip tease. J.G. stated that Hurley fondled himself while watching her, that they performed oral sex on each other, and that Hurley made J.G. fondle him. J.G. further testified that Hurley often penetrated her vagina with his fingers, and there was a lot of "humping," but she could not recall whether Hurley penetrated her vagina with his penis.

¶19 The circuit court granted the other-acts motion, concluding that the evidence was admissible to show opportunity and method of operation. The circuit court also concluded that the evidence was relevant and that it bolstered M.C.N.'s credibility. The circuit court explained that there was great similarity between the assaults because 1) the victims were similar in age, 2) Hurley played a game with each victim before the assaults, and 3) each victim was digitally penetrated by Hurley, a trusted family member, in a private bedroom. Finally, the circuit court concluded the testimony would not be unfairly prejudicial if the court gave two limiting instructions.

¶20 At trial, Hurley testified in his own defense. Hurley denied assaulting M.C.N. and testified that his job required some travel causing his absence from one day to one week at a time. Hurley did not present an alibi defense. On direct examination Hurley was asked by his attorney: "Now, [J.G.] testified that she was assaulted when she believed she was around eight years old. Do you recall having an encounter with [J.G.] when she was around eight?" Hurley answered: "No." He

9

was then asked by his attorney: "Do you recall any of the allegations [J.G.] brought up here today?" Hurley answered: "No, I do not." During closing arguments the assistant district attorney stated: "when the defendant testified, he was asked by his—by the attorney regarding [J.G.] he said well, do you recall any of these incidents with [J.G.] ever happening? And his answer was no. The question wasn't did you do this or not, it was do you recall? That's different than it didn't happen." Hurley's trial counsel did not object. The assistant district attorney had in his possession a police report which explained that on September 26, 2010, J.G. confronted Hurley over the phone about the assaults he committed against her. During this conversation Hurley denied assaulting J.G.

¶21 The jury found Hurley guilty and the circuit court sentenced Hurley to 25 years imprisonment consisting of 18 years of initial confinement and 7 years of extended supervision.

¶22 Hurley subsequently filed a post-conviction motion, arguing the amended complaint violated his right to due process by failing to provide adequate notice to plead and prepare a defense, and that his trial counsel was ineffective for failing to move to dismiss the amended complaint. Alternatively, Hurley argued that the amended complaint was deficient and constituted plain error requiring reversal. Hurley also argued that his counsel was ineffective for failing to object to the prosecutor's remarks during closing arguments. Hurley also requested a new trial in the interest of justice because of the

10

prosecutor's purportedly improper remarks during closing argument.

¶23 At a Machner[7] hearing, Hurley's trial counsel testified that he decided not to file a motion to dismiss after researching the issue of constitutionally deficient charging documents and discussing the matter with Hurley. Counsel said that he concluded a motion to dismiss would likely fail based on his reading of the case law, and that, even if it had succeeded, the State would likely re-file with additional details. With regard to the allegedly improper remarks, trial counsel testified that he made a strategic decision not to object, explaining an objection would have drawn "more attention from the jury" to a statement that the prosecutor "said very quickly and didn't harp on."

¶24 The circuit court rejected Hurley's notice claim. However, the court ordered a new trial in the interest of justice based on the prosecutor's remarks that Hurley did not recall assaulting J.G. Both parties filed cross-appeals. In an unpublished per curium decision, the court of appeals reversed in part concluding that 1) the amended complaint violated Hurley's right to due process, and 2) the circuit court erred in admitting J.G.'s other-acts evidence. Hurley, No. 2013AP558-CR, ¶¶38, 54. The court of appeals did not address whether the closing argument remarks were improper.

---

[7] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶25 The State petitioned for review, which this court granted on September 18, 2014.

## II. STANDARD OF REVIEW

¶26 Whether a complaint and information are sufficient to provide notice to the defendant is a question of constitutional fact that we review de novo. State v. Fawcett, 145 Wis. 2d 244, 249, 426 N.W.2d 91 (Ct. App. 1988). "The criminal complaint is a self-contained charge which must set forth facts that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable." Id. at 250 (citing State v. Hoffman, 106 Wis. 2d 185, 197, 316 N.W.2d 143 (Ct. App. 1982)). The sufficiency of a pleading is a question of law reviewed independently. Id. In reviewing a complaint, our analysis is restricted to the charging document and we do not consider extrinsic evidence.

¶27 In order to satisfy the requirements of the United States and Wisconsin Constitutions, the charges in the complaint and information "must be sufficiently stated to allow the defendant to plead and prepare a defense." Id. When reviewing the sufficiency of the complaint and information, we consider two factors: "whether the accusation is such that the defendant [can] determine whether it states an offense to which he [can] plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense." Holesome v. State, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968).

12

¶28 The admission of other-acts evidence is within the trial court's discretion.  State v. Davidson, 2000 WI 91, ¶38, 236 Wis. 2d 537, 613 N.W.2d 606.  "We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion."  State v. Marinez, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399 (citing State v. Hunt, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771).  A reviewing court will uphold a circuit court's evidentiary ruling if it "'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'"  Id. (quoting Hunt, 263 Wis. 2d 1, ¶34).

¶29 "When reviewing a circuit court's determination for erroneous exercise of discretion an appellate court may consider acceptable purposes for the admission of evidence other than those contemplated by the circuit court, and may affirm the circuit court's decision for reasons not stated by the circuit court."  Hunt, 263 Wis. 2d 1, ¶52.  "'Regardless of the extent of the trial court's reasoning, [a reviewing court] will uphold a discretionary decision if there are facts in the record which would support the trial court's decision had it fully exercised its discretion."  Id. (citing State v. Shillcutt, 116 Wis. 2d 227, 238, 341 N.W.2d 716 (Ct. App. 1983), aff'd on other grounds, 119 Wis. 2d 788, 350 N.W.2d 686 (1984)).

¶30 "A trial court's ruling on a postconviction motion for a new trial in the interest of justice is within its discretion."  State v. Williams, 2006 WI App 212, ¶13, 296 Wis. 2d 834, 723 N.W.2d 719 (citing State v. Randall, 197

13

Wis. 2d 29, 36, 539 N.W.2d 708 (Ct. App. 1995)). Thus, we review the circuit court's decision granting of Hurley's motion for an erroneous exercise of discretion. Id. "A trial court properly exercises its discretion if it applies accepted legal standards to the facts in the record." Id. (citation omitted).

### III. DISCUSSION

¶31 We first consider whether the amended complaint and information provided adequate notice to satisfy Hurley's due process right to plead and prepare a defense, and conclude that it did. We then address whether the circuit court erroneously exercised its discretion in admitting other-acts evidence that Hurley had sexually assaulted his sister, J.G., when they were children, and conclude that it did not. Finally, we consider whether the circuit court erroneously exercised its discretion in granting a new trial in the interest of justice, and conclude that it did. We therefore reverse the court of appeals and remand to the circuit court with the instruction to reinstate the judgment of conviction.

### A. Under the Totality of the Circumstances, the Amended Complaint and Information Provided Hurley with Adequate Notice to Plead and Prepare a Defense.

¶32 When reviewing the sufficiency of a criminal complaint and information, a court considers "whether, under the totality of the circumstances, the complaint and information allege facts

14

such that the defendant can plead and prepare a defense."[8] State v. Kempainen, 2015 WI 32, ¶36, __ Wis. 2d __, __ N.W.2d __.

¶33 Child sexual assaults are difficult crimes to detect and to prosecute, as typically there are no witnesses except the victim and the perpetrator. Fawcett, 145 Wis. 2d at 249. Often the child is assaulted by a trusted relative and does not know whom to turn to for protection. Id. The child may have been threatened, or, as is often the case, may harbor a natural reluctance to come forward. Id. "These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory." Id. Thus, "[y]oung children cannot be held to an adult's ability to comprehend and recall dates and other specifics." Id. See also Gail S. Goodman & Vicki S. Helgeson, Child Sexual Assault: Children's Memory and the Law, 40 U. Miami L. Rev. 181, 185-86 (1985) (explaining that "children often retain and report less than adults do"). "A person should not be able to escape punishment for such a . . . crime because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such . . . activity." State v. Sirisun, 90 Wis. 2d 58, 65-66 n.4, 279 N.W.2d 484 (Ct. App. 1979). "However, no matter how abhorrent the conduct may be, a

---

[8] Neither Hurley nor the State raise the double jeopardy factor, whether conviction would be a bar to another prosecution. Therefore, we do not address it.

15

defendant's due process [rights] . . . may not be ignored or trivialized." Fawcett, 145 Wis. 2d at 250.

¶34 Because "[t]ime is not of the essence in [child] sexual assault cases" when the date of the commission of the crime is not a material element of the offense, it need not be precisely alleged. Id. at 250; see also Hoffman, 106 Wis. 2d at 198-99 ("'[W]here time of commission of a crime is not a material element of the offense charged, it need not be precisely alleged.'"). A "more flexible application of notice requirements is required and permitted [in child sexual assault cases]. The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance." Fawcett, 145 Wis. 2d at 254.

¶35 With these considerations in mind, the Fawcett court adopted a seven factor test to apply when determining whether a charge of sexual abuse of a child provides adequate notice. These factors include:

> (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

Id. at 253.

16

¶36 As we explain in Kempainen, ___ Wis. 2d ___, ¶4, a reviewing court may apply the seven Fawcett factors, and may consider any other relevant factors necessary to determine whether a criminal complaint and information provide adequate notice.  No single factor is dispositive, and not every Fawcett factor will necessarily be present.

¶37 Before turning to the Fawcett factors, we must address the parties' dispute over how many individual assaults are alleged in the amended complaint because the criminal complaint places a defendant on notice as to what he may have to defend against.  The State contends that the amended complaint alleged 26 assaults while Hurley claims the amended complaint alleged five assaults.  "A criminal complaint is a self-contained charge which must set forth facts that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable." Hoffman, 106 Wis. 2d at 197; State ex rel. Evanow v. Seraphim, 40 Wis. 2d 223, 226, 161 N.W.2d 369 (1968).  A complaint must put forth "enough that a fair-minded magistrate could conclude that the facts and circumstances alleged justify further criminal proceedings and that the charges are not merely capricious."  Hoffman, 106 Wis. 2d at 200 (citation and quotation omitted).  We have previously explained that a criminal complaint must answer five questions when stating probable cause: "1) Who is charged?; 2) What is the person charged with?; 3) When and where did the alleged offense take

17

place?; 4) Why is this particular person being charged; and 5) Who says so? or How reliable is the informant?" <u>State v. White</u>, 97 Wis. 2d 193, 203, 295 N.W.2d 346, 350 (1980). In reviewing a complaint, our analysis is restricted to the charging document and we do not consider extrinsic evidence.

¶38 The amended complaint alleges six acts that occurred in M.C.N.'s bed: five acts of digital penetration of the vagina and one act of forced touching of Hurley's genitals, all contrary to Wis. Stat. § 948.02(1)(b).[9] The amended complaint reads:

---

[9] Wisconsin Stat. § 948.02(1)(b) states: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of one of the following: If the sexual contact or sexual intercourse did not result in great bodily harm to the person, a Class B felony."

The definition of sexual intercourse, which was constant throughout the charging period, was

> vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required.

Wis. Stat. § 948.01(6).

Sexual contact, as applicable here, remained constant throughout the charging period, and was defined as:

> (a) Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant:

(continued)

18

[Hurley] would get into bed with [M.C.N.] and place his hand into her pajama bottoms and put his fingers inside her vagina. M.C.N. said she thought this occurred approximately five times during the time she lived with him. On these occasions, the defendant would also try to get her to touch him, which M.C.N. stated she did during one of these encounters.

We agree with the State that the incident of forced touching of Hurley's genitals is sufficiently alleged because the context——where M.C.N. had just alleged Hurley committed acts of digital penetration——indicates that Hurley forced M.C.N. to touch his genitals while he touched her genitals.

¶39 Additionally, at least twenty acts of sexual contact with a child under the age of thirteen, contrary to Wis. Stat. § 948.02(1)(b)[10] are alleged that relate to the after-school weighing incidents. The amended complaint alleges:

[M.C.N.] stated that after getting home from school, the defendant would have her take her clothing off and would put her on his shoulders to take her into the

---

1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.

2. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

Wis. Stat. § 948.01(5).

Intimate parts was also consistent throughout the charging period and was defined as "the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being." Wis. Stat. § 939.22(19).

[10] See supra, note 9.

19

bathroom. He would then put her on the scale. These incidents occurred on a very frequent basis, M.C.N. thought a couple of times per week. . . . [The defendant] weighed her naked in excess of 20 times.

When Hurley had M.C.N. take off her clothes so that he could carry her naked on his shoulders, her intimate parts (buttocks, groin, vagina, or pubic mound) would necessarily have been in contact with Hurley's neck and shoulders. "Intent can [] be inferred from the circumstances and from one's acts." Hoffman, 106 Wis. 2d at 200. The circumstances here (frequent nude weighing, nude "rides" on Hurley's shoulders, and the five acts of digital penetration and one act of forced touching) are sufficient to draw a reasonable inference that Hurley acted with sexual intent during these incidents.

¶40 These 26 acts in the amended complaint were sufficiently alleged to put Hurley on notice that he might have to defend against these allegations as incidents of sexual intercourse and sexual contact.[11] Therefore, our application of the Fawcett factors will be grounded in the conclusion that the amended complaint alleges 26 separate and distinct sexual assaults.

¶41 Further, before applying the Fawcett factors, it is important to reiterate our conclusion in Kempainen that State v. R.A.R., 148 Wis. 2d 408, 408, 435 N.W.2d 315 (Ct. App. 1988),

---

[11] Because we are bound by the four corners of the amended complaint and do not examine extrinsic evidence, we do not examine any facts adduced at trial, what the prosecution focused on, or the court's jury instructions.

incorrectly limited a court's consideration of factors one through three to situations where a defendant alleges that prosecutors could have obtained a more narrow offense period through diligent efforts. As we explain in Kempainen, Fawcett made no such limitation. Kempainen, ___ Wis. 2d ___, ¶28 ("'courts may consider these factors and any other relevant factors helpful. . . . To the extent that R.A.R. conflicts with the holding in Fawcett, and thus limits the factors a court may consider when applying the Holesome test [(whether the accusation is such that the defendant can determine whether it states an offense to which he can plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense)] it is overruled."). Fawcett concluded that all seven factors can "assist us in determining whether the Holesome test is satisfied" and proceeded to apply all seven factors. Id. at 253-54. See also State v. Miller, 2002 WI App 197, 257 Wis. 2d 124, 650 N.W.2d 850 (applying all seven Fawcett factors despite the absence of any claim of a lack of prosecutorial diligence). When evaluating whether a complaint and information give a defendant sufficient notice a court may examine all the Fawcett factors, and any other factors it deems relevant.

¶42 Turning to the Fawcett factors, factor one, the age and intelligence of the victim, weighs in favor of our conclusion that the amended complaint and information provided notice. In a prosecution under Wis. Stat. § 948.025, due weight must be given to the impact of the repeated nature of the sexual

21

assaults on a child's ability to provide details. Contrary to the court of appeals' conclusion that the assaults may not have begun until M.C.N. was 11 years old, the amended complaint plainly states that the assaults began "shortly after the marriage at the residence" when M.C.N. was six years old. At age six, M.C.N. was still a young child. At this young age it is highly unlikely that she could particularize the dates or the sequences in which the assaults occurred. Even at the age of ten years old, given her young age and intelligence, M.C.N. was likely rendered incapable of reporting the incidents or recalling back to the exact date or time period when the assaults began.

¶43 Further, as described below, assaults committed by a stepfather against a young girl constitute a compelling reason for the delay in reporting. See generally Miller, 257 Wis. 2d 124, ¶31 (describing that where the sexual assault of a child occurred in a doctor-patient relationship, the trust that a child would place in a doctor would explain a delay in reporting and thus such delay would not create a due process issue); Goodman & Helgeson, supra, Child Sexual Assault, 185-86. Additionally, the repeated and similar nature of the crimes could reasonably have led to M.C.N.'s failure to recall the exact dates and times of the assaults. Goodman & Helgeson, supra, Child Sexual Assault, 190-91. A child repeatedly assaulted at such a young age is likely extremely confused and upset, and it is not surprising that she would not take note of the specific date on which the assaults occurred.

¶44 Factors two and three, the surrounding circumstances and the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately, also weigh in favor of our conclusion that the amended complaint and information provided notice. Hurley was M.C.N.'s stepfather and they lived together in the same home. Hurley allegedly committed the assaults when they were alone, and the assaults were frequent and similar in nature. "Child molestation often encompasses a period of time and a pattern of conduct. As a result, a singular event or date is not likely to stand out in [a] child's mind." Fawcett, 145 Wis. 2d at 254. Goodman & Helgeson, supra, Child Sexual Assault, 190 ("Children can order simple, familiar events quite well, but have difficulty ordering more complex, less familiar events.").

¶45 The acts occurred in the family home when Hurley may have been alone with M.C.N., either at night or after school. The assaults were not likely to happen on any particular day, and M.C.N. was as specific as could reasonably be expected about the times at which they took place. Given that M.C.N. was the only witness, was assaulted in the home during regular activities, and was dissuaded from reporting by Hurley during the shower incident, it is unlikely that the crimes would have been discovered immediately or would have occurred at a specific time or at a unique location that would have stuck out in a child's mind. Further, during the shower incident, Hurley specifically asked if M.C.N. was going to tell her mother, as if to ward off potential accusations and to dissuade M.C.N. from

23

coming forward to tell her mother, the most likely person that could have helped. Finally, as Hurley's stepdaughter, M.C.N. would undoubtedly feel vulnerable as Hurley held a position of authority over M.C.N. as her stepfather and the sexual acts he performed on her highlighted his position of dominance.

¶46 The assaults themselves, the statement made by Hurley to M.C.N., and Hurley's paternal relationship indisputably would have had a significant impact on M.C.N, and thus it is reasonable that no single incident stood out in M.C.N.'s memory. When a parent abuses a child's trust and takes advantage of the child's vulnerability, it is also understandable that a child may not immediately come forward. M.C.N.'s age at the time of the assaults and the circumstances surrounding the assaults "represent the most compelling factor[s] in explaining [M.C.N.'s] delay in reporting." Miller, 257 Wis. 2d 124, ¶¶30-31.

¶47 Factor four, the length of the alleged period of time in relation to the number of individual criminal acts alleged further belies Hurley's claim. The amended complaint alleged 26 separate criminal acts spanning six years. The court of appeals was incorrect in determining that "[a]ll of the acts could have occurred within a single month in 2000, or within a single month in 2005." Hurley, No. 2013AP558-CR, ¶29. The amended complaint was clear that M.C.N. stated that the offenses occurred over several years and began shortly after the marriage in 2000. Though M.C.N. could not state the order of the assaults or what month each assault occurred in, given that the assaults were

24

committed by her stepfather as well as their cumulative nature, "the vagaries of [M.C.N's] memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution." Fawcett, 145 Wis. 2d at 254.

¶48 At the time of the assaults Hurley was M.C.N.'s stepfather, and they lived together in the same house. As a result, the defenses available to Hurley were limited. Hurley contends that, with a narrower charging period, it is conceivable that he could have raised an alibi defense. However, as the court of appeals explained in Fawcett:

> an alibi defense does not change the nature of the charges against the defendant or suddenly incorporate time as a necessary element of the offense. . . . If we required that a complaint be dismissed for lack of specificity when a defendant indicated a desire to assert an alibi defense, such a holding would create potential for an untenable tactic: a defendant would simply have to interpose an alibi defense in order to escape prosecution once it became apparent that a child victim/witness was confused with respect to the date or other specifics of the alleged criminal event. . . . We decline to adopt such a rule.

Fawcett, 145 Wis. 2d at 254 n.3. See also People v. Jones, 792 P.2d 643 (Cal. 1990) (concluding that where a defendant has lived with a victim for an extensive period of time and has thus had continuous access to the victim, neither alibi nor mistaken identity are likely defenses). We too decline to adopt such a rule. Thus, factor four weighs against Hurley's argument because no indication exists that a narrower charging period would have changed or aided his defense under the circumstances.

25

¶49 Factors five and six, the passage of time between the alleged period of the crime and the defendant's arrest, and the duration between the date of the complaint and the alleged offense, while at first blush may support Hurley's claim, a close examination proves they do not.

¶50 These factors address the "problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations." Miller, 257 Wis. 2d 124, ¶35. The offense period here ended in 2005, the investigation did not begin until 2010, and the District Attorney did not charge Hurley until 2011. Hurley advances a strictly mechanical and mathematical approach to these factors. Hurley simply points out that the charging period was from 2000 to 2005, and the District Attorney's Office did not charge him until June 2011, 5 to 10 years after the assaults.[12] In essence, what Hurley is arguing is that too much time has passed to allow for a prosecution. However, the District Attorney's Office filed the amended complaint within the period prescribed by the applicable statute of limitations.[13]

---

[12] The court of appeals' discussion of these factors was just as mechanical, in that it merely examined the length of time and compared it to the length of time that was rejected in R.A.R. Hurley, No. 2013AP558-CR, ¶31.

[13] The amended complaint alleged a violation of Wis. Stat. § 948.025(1). A prosecution under Wis. Stat. § 948.025(1)(a), (b), (c), or (d) "may be commenced at any time." Wis. Stat. § 939.74(2)(a)(1) (2011-12). A prosecution under Wis. Stat. § 948.025(1)(e) "shall be commenced before the victim reaches the age of 45 years or be barred." Wis. Stat. § 939.74(2)(c) (2011-12).

26

"'The statute of limitations is the principal device . . . to protect against prejudice arising from a lapse of time between the date of an alleged offense and an arrest.'" State v. McGuire, 2010 WI 91, ¶45, 328 Wis. 2d 289, 786 N.W.2d 227 (quoting State v. Wilson, 149 Wis.2d 878, 903, 440 N.W.2d 534 (1989)). If we were to accept Hurley's argument we would invalidate the statute of limitations because the amended complaint was filed within the statute of limitations.

¶51 Thus, a purely mathematical approach is impracticable when determining the overall reasonableness of the charging period. The long delay may have hampered Hurley's ability to provide a defense; however, Hurley has not explained how this delay actually impacted his ability to plead and prepare a defense. Nor has Hurley alleged, much less demonstrated, any improper purpose for the delay. See Kempainen, ___ Wis. 2d ___, ¶39. Simply stating that he has been impacted is insufficient. A defendant arguing that factors five and six weigh in his favor must articulate how his ability to present a defense has been impaired. Further, as the State suggests, good reason exists for the delay; namely, the fact that M.C.N. waited to report the incidents until 2010 when Hurley moved away to Indiana. Therefore, factors five and six weigh in favor of our conclusion that the amended complaint and information provided notice.

¶52 Factor seven, the ability of the victim or complaining witness to particularize the date and time of the alleged offense, weighs against Hurley's argument. As we explained when describing the first three factors, at age six, when the first

27

offense occurred, M.C.N.'s ability to recall details was very limited and thus she did not have the capacity to particularize the date of each offense. Despite not being able to particularize the date of each offense, she was able to particularize the time of each offense. M.C.N. stated that the acts of digital penetration and forced touching occurred when she went to bed at night, and the "weighing" incidents occurred after school. Also, M.C.N.'s ability to recall the particular dates on which each assault occurred was hampered by their repeated and similar nature. We thus disagree with the court of appeals' conclusion that M.C.N.'s "complete inability" to narrow down the charging period was not understandable. Hurley, No. 2013AP558-CR, ¶34. Given the repeated and similar nature of the assaults at the hands of a trusted stepparent in the family home, it is reasonable and understandable that M.C.N. would be unable to narrow down the charging period.

¶53 Based on our application of the Fawcett factors, the amended complaint and information provided sufficient notice to satisfy Hurley's due process right to plead and prepare a defense. Hurley alleged that his trial counsel was ineffective for failing to object to the amended complaint and that the alleged error in the amended complaint affected a substantial right, such that the plain error rule mandated dismissal. However, because the amended complaint did not violate Hurley's due process rights, counsel's recommendation not to file a motion to dismiss was reasonable professional advice and was not

28

prejudicial.  Put simply, the plain error rule does not apply here because no error occurred.

## B. The Circuit Court Did Not Erroneously Exercise Its Discretion in Admitting Other-Acts Evidence.

¶54 Next, we consider whether the circuit court erroneously exercised its discretion in admitting other-acts evidence that Hurley had repeatedly sexually assaulted his sister, J.G., when she was between the ages of 8 and 10 years old and he was between the ages of 12 and 14 years old.  We conclude that the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence, as "[t]he circuit court's decision was <u>not</u> a decision that no reasonable judge could make."  <u>State v. Payano</u>, 2009 WI 86, ¶52, 320 Wis. 2d 348, 768 N.W.2d 832.

### i. General Principles Regarding the Admissibility of Other-Acts Evidence

¶55  Under Wis. Stat. § 904.04(2)(a) (2011-12):

> evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[14]

¶56 Wisconsin Stat. § 904.04(2)(a) (2011-12) thus "prohibits the admission of evidence of a defendant's other bad acts to show that the defendant has a propensity to commit crimes."[15] Marinez, 331 Wis. 2d 568, ¶18. "However, other-acts evidence that is offered for a purpose other than the prohibited propensity purpose is admissible if it is relevant to a permissible purpose and is not unfairly prejudicial." Id.

¶57 In Sullivan, we developed a three-prong test to guide courts in determining whether other-acts evidence is admissible under Wis. Stat. § 904.04(2)(a) (2011-12). Other-acts evidence is admissible (1) if it is offered for a permissible purpose pursuant to Wis. Stat. § 904.04(2)(a) (2011-12), (2) if it is relevant under the two relevancy requirements of Wis. Stat.

---

[14] Wisconsin Stat. § 904.01(2)(a) (2011-12) "contains an illustrative, and not exhaustive, list of some of the permissible purposes for which other-acts evidence is admissible." State v. Marinez, 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399. "The rule does not require that courts pigeonhole . . . the other act evidence into one of these [enumerated] categories. As long as the evidence is relevant and otherwise admissible apart from the propensity inference (act/character/conduct), Wis. Stat. § 904.04(2) does not bar its use." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.6, at 173 (3d ed. 2008).

[15] In other words, other-acts evidence cannot be used to prove a person's character through circumstantial evidence of conduct, but instead must be used for a permissible purpose.

§ 904.01 (2011-12),[16] and (3) if its probative value is not substantially outweighed by the risk or danger of unfair prejudice under Wis. Stat. § 904.03 (2011-12). Sullivan, 216 Wis. 2d at 772-73; State v. Jackson, 2014 WI 4, ¶55, 352 Wis. 2d 249, 841 N.W.2d 791.

¶58 "The party seeking to admit the other-acts evidence bears the burden of establishing that the first two prongs are met by a preponderance of the evidence." Marinez, 331 Wis. 2d 568, ¶19 (citations omitted). "Once the proponent of the other-acts evidence establishes the first two prongs of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice." Id. (citations omitted).

¶59 "Because this is a child sexual assault case with a young victim, the greater latitude rule permit[s] a more liberal admission of other crimes evidence."[17] Id., ¶20 (citing

---

[16] Wisconsin Stat. § 904.01 (2011-12) defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is relevant if it (1) "relates to a fact or proposition that is of consequence to the determination of the action" and (2) "has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." State v. Sullivan, 216 Wis. 2d 768, 785-86, 576 N.W.2d 30 (1998).

[17] Despite the greater latitude rule, courts still have the duty to ensure that other-acts evidence is offered for a proper purpose. State v. Hunt, 2003 WI 81, ¶87, 263 Wis. 2d 1, 666 N.W.2d 771.

31

Davidson, 236 Wis. 2d 537, ¶44; State v. Hammer, 2000 WI 92, ¶23, 236 Wis. 2d 686, 613 N.W.2d 629) (internal quotation marks omitted).  The greater latitude rule applies to each Sullivan prong.  Davidson, 236 Wis. 2d 537, ¶51.  Other-acts evidence is particularly relevant in child sexual assault cases because an average juror likely presumes that a defendant is incapable of such an act.[18]  Id., ¶42.  An additional rationale for the greater latitude rule "is the need to corroborate the victim's testimony against credibility challenges."[19]  Id., ¶40.

ii. The Sullivan Analysis

---

[18] We have explained that the other-acts evidence was relevant under the greater latitude rule because:

> [t]o a person of normal, social and moral sensibility, the idea of the sexual exploitation of the young is so repulsive that it's almost impossible to believe that none but the most depraved and degenerate would commit such an act.  The average juror could well find it incomprehensible that one who stands before the court on trial could commit such an act.  Juries must have all the relevant facts before them.  A past history of such a defendant's plans, schemes and motives is relevant.

State v. Friedrich, 135 Wis. 2d 1, 27-28, 398 N.W.2d 763 (1987).

[19] Because of "the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in such cases" a more liberal admissibility standard in child sexual assault cases applies.  State v. Davidson, 2000 WI 91, ¶42, 236 Wis. 2d 537, 613 N.W.2d 606.  "The dangers presented by the propensity inference are thus evenly balanced by the need to corroborate young victims whose horrific allegations might otherwise be doubted."  Blinka, supra, § 404.7, at 218-19.

32

¶60 With these principles in mind, we turn now to whether the circuit court erroneously exercised its discretion in admitting testimony from J.G. that Hurley sexually assaulted her when she was between the ages of 8 and 10 years old and he was between the ages of 12 and 14 years old.

1. Was the Evidence Offered for a Permissible Purpose?

¶61 The circuit court admitted the other-acts evidence for two purposes: method of operation and opportunity.[20] After describing J.G.'s testimony, the circuit court, in explaining why the evidence was admissible to show method of operation, stated, "there is a great similarity [in the] descriptions of what the two alleged victims are claiming occurred here. There's quite a similarity in this. And again, I think that go[es] towards the alleged method of operation of Mr. Hurley and how he goes about this." The circuit court explained

---

[20] Similar to its position at the court of appeals, the State does not argue that opportunity was a permissible purpose for the other-acts evidence. Therefore, the argument is conceded. Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp., 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979). While it is axiomatic that we are not bound by a party's concession, we agree with the court of appeals on this point. Hurley's assaults against J.G. do not inform whether or not he had the opportunity to assault M.C.N years later, without overlapping with the impermissible propensity inference. Therefore, our analysis will center on the permissible purposes, method of operation and motive. See Hunt, 263 Wis. 2d 1, ¶52 (explaining that "[w]hen reviewing a circuit court's determination for erroneous exercise of discretion an appellate court may consider acceptable purposes for the admission of evidence other than those contemplated by the circuit court, and may affirm the circuit court's decision for reasons not stated by the circuit court.").

33

that Hurley had a distinct method of operation because he repeatedly digitally penetrated each victim, incorporated "games" into each assault, and targeted a specific type of girl: an elementary school-aged girl, to whom he is related, and over whom he had a great degree of control. The circuit court noted that J.G. was Hurley's younger sister and was assaulted between the ages of 8 and 10 years old, and M.C.N. was Hurley's stepdaughter and was assaulted between the ages of 6 and 11 years old. The circuit court also noted that Hurley assaulted each victim when no one else was around. The circuit court concluded that these similarities bolstered M.C.N.'s credibility given Hurley's distinct method of operation. The circuit court also admitted the other-acts evidence for the purpose of establishing Hurley's opportunity stating it answered the question: "Did Mr. Hurley have the opportunity to commit these crimes?"

¶62 Identifying a proper purpose for other-acts evidence is not difficult and is largely meant to develop the framework for the relevancy examination. Payano, 320 Wis. 2d 348, ¶63; see also Marinez, 331 Wis. 2d 568, ¶25 ("The purposes for which other-acts evidence may be admitted are 'almost infinite' with the prohibition against drawing the propensity inference being the main limiting factor."). "The proponent need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.6, at 180 (3d ed. 2008). As long as one

34

permissible purpose for the other-acts evidence exists, the first prong of the Sullivan analysis is met.  See Hammer, 236 Wis. 2d 686, ¶29 n. 4.

¶63  Applying these principles to our review of the circuit court's decision, we conclude that, given the greater latitude rule, the circuit court reasonably concluded that the other-acts evidence was admissible for the purposes of establishing Hurley's method of operation.  Further, we agree with the State that the other-acts evidence was admissible to show Hurley's motive.

¶64  First, the circuit court did not erroneously exercise its discretion in concluding that the other-acts evidence was admissible to establish method of operation through which Hurley's plan may be proved because of the similarity between the two acts.  Id., ¶24; see also Blinka, supra, § 404.7, at 211 ("Proof of a distinctive 'modus operandi' does not, however, lead to automatic admissibility.  Rather, the method of operation must be probative of issues such as intent, plan, or identity.").  As we explained in State v. Fishnick, 127 Wis. 2d 247, 263, 378 N.W.2d 272 (1985):

> Where other-acts evidence is used for identity purposes, similarities must exist between the 'other act' and the offense for which the defendant is being tried.  Similarities which tend to identify the defendant as the proponent of an act also tend to ensure a high level of probativeness in the other-acts evidence.  These similarities may be established, for example, where there is a discernable method of operation from one act to the next, [citation omitted] or where the other act and the crime charged and their surrounding circumstances are so similar that the

35

> incidents and circumstances bear the imprint of the
> defendant.

(citations omitted).  "The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged.  Whether there is a concurrence of common features is generally left to the sound discretion of the trial courts."  State v. Kuntz, 160 Wis. 2d 722, 746-47, 467 N.W.2d 531 (1991).

¶65 The circuit court acted within its discretion in admitting J.G.'s testimony for the purpose of proving method of operation to prove the plan of Hurley.  A great similarity exists between the two sets of assaults as 1) J.G.'s and M.C.N.'s allegations were very similar, 2) J.G. and M.C.N. were similar in age, 3) both sets of assaults involved digital penetration that were repeated over a number of years, and 4) Hurley preceded the assaults with games.

¶66 First, the allegations were similar.  J.G.'s and M.C.N.'s testimony showed that Hurley's preferred sexual target was an elementary-school-aged girl who lived in his home and was a member of his immediate family.  The testimony showed that Hurley also preferred a young girl over whom he had a great deal of control and with whom there was a relationship of implied trust: in J.G.'s case an older brother whom J.G. "always leaned towards" growing up, and in M.C.N.'s case her stepfather to whom she was close.  In each instance Hurley used this trust to his advantage by continually assaulting each girl and by attempting to dissuade them from coming forward.  Hurley asked J.G. during

36

one assault "you're not going to tell mom and dad, are you?" and asked M.C.N. during the shower incident "you're not going to tell your mother, are you?," language that was virtually identical.

¶67 Second, the victims were similar in age. J.G. was assaulted between the ages of 8 and 10 years old, and M.C.N. was assaulted between the ages of 6 and 11 years old. Third, each assault involved repeated acts of digital penetration in a private bedroom. J.G.'s testimony also indicated that, while Hurley's conduct with her involved a wider variety of sexual acts, digital penetration was among his preferred acts, and he engaged in these acts regularly over a period of years. Hurley also repeatedly digitally penetrated M.C.N. over a number of years, even though he also committed other sexual acts with M.C.N.

¶68 Finally, Hurley preceded each set of assaults with a "game" that involved stripping the victim of her clothes. With regard to J.G., Hurley had her wear a fur coat and perform a striptease before the assaults. With regard to M.C.N., Hurley chased M.C.N. around the house and stripped her naked before the first assault. Hurley also had M.C.N. remove all her clothes, placed her on his shoulders, and took her to the bathroom where he would weigh her.

¶69 Though Hurley was younger when he assaulted J.G., and he was much closer to J.G. in age, the striking similarities outweigh these differences. Given both the similarities between the assaults and greater latitude rule, the circuit court did

37

not erroneously exercise its discretion in admitting the other-acts evidence to show method of operation through Hurley's plan.

¶70 The State also suggests that the evidence is admissible to prove motive. As we explained above, a reviewing court may consider acceptable purposes for the admission of other-acts evidence other than that contemplated by the circuit court. Hunt, 263 Wis. 2d 1, ¶52 (citations omitted).

¶71 "'Motive' is defined as the cause or reason that moves the will and induces action." Blinka, supra, § 404.07, at 202; State v. Balistreri, 106 Wis. 2d 741, 756, 317 N.W.2d 493 (1982) ("Motive explains the reasons for a person's actions."). The admissibility of other-acts to prove motive "is purely a function of relevance: How does the other act help the trier of fact to understand why the person acted as he did?" Blinka, supra, § 404.7, at 204.

¶72 "When a defendant's motive for an alleged sexual assault is an element of the charged crime, we have held that other crimes evidence may be offered for the purpose of establishing . . . motive." Hunt, 263 Wis. 2d 1, ¶60 (emphasis added); see also Davidson, 236 Wis. 2d 537, ¶57 ("Our cases establish that when the defendant's motive for an alleged sexual assault is an element of the charged crime, other crimes evidence may be offered for the purpose of establishing motive.") (emphasis added).

38

¶73 Here, the District Attorney's Office charged Hurley with repeated sexual assault of a child under Wis. Stat. § 948.025.[21] "There is no doubt that sexual assault, involving either sexual contact or sexual intercourse, requires an intentional or volitional act by the perpetrator." Hunt, 263 Wis. 2d 1, ¶60. Here, "[t]he other-acts evidence was properly admitted to prove motive because purpose is an element of sexual assault, and motive [is] relevant to purpose." Hunt, 263 Wis. 2d 1, ¶60 (citing State v. Plymesser, 172 Wis. 2d 583, 593-96, 493 N.W.2d 367 (1992)); Davidson, 236 Wis. 2d 537, ¶57.

¶74 The motive to which the other-acts evidence relates is Hurley's desire to achieve sexual arousal or gratification. As the State correctly notes: "within its discretion, a circuit court could conclude that Hurley's repeated acts of incest with a younger female family member in his formative years was relevant to show Hurley's desire as an adult to target another girl of the same age within his immediate family for sexual gratification." "Thus [Hurley's] purpose or motive for allegedly touching [M.C.N.] was one element of the charged crime, and evidence relevant to motive was therefore admissible." Davidson, 236 Wis. 2d 537, ¶59. Hurley's

---

[21] For the relevant statutory definitions see supra notes 3, 6, & 9. Though the circuit court did not instruct the jury on "sexual contact," as we explained above a reviewing court "may consider acceptable purposes for the admission of evidence other than those contemplated by the circuit court." Hunt, 263 Wis. 2d 1, ¶52.

"motive . . . for allegedly touching or having intercourse with [M.C.N.] was part of the corpus of the crimes charged, and evidence relevant to the motive . . . was therefore admissible." Hunt, 263 Wis. 2d 1, ¶60. The court of appeals thus was incorrect in rejecting motive as a permissible purpose. Hurley, No. 2013AP558-CR, ¶47. Given the greater latitude rule, we conclude that the other-acts evidence was admissible to show Hurley's motive.

2. Were the Assaults Committed by Hurley against J.G. Relevant to the Admissible Purposes?

¶75 In describing the relevance of the other-acts evidence, the circuit court explained:

> I think that this evidence is relevant and it – certainly it bolsters the credibility of [M.C.N.]. It clearly relates to a fact of proposition of whether it occurred or not. . . . The Hammer case talks about the measure of probative value in assessing relevance is a similarity between the charged offense and the other act. . . . Now I understand that the nearness of time, we don't have that here. We're talking perhaps 15 to 20 years prior, but there is case law in this State and even in this same paragraph here, paragraph 32 of Hammer it talks about incidences that occurred years before. They talked also about evidence being admissible even though the victims were of different ages. I'm finding here the victims were very similar in age and that the alleged conduct is . . . very similar when you talk about digital penetration, you talk about the games that the defendant allegedly had each of the victims partake in. So I do find it to be probative as well. . . . Also the allegation, of course, is that [they] share some common characteristics, occurring when there is nobody else around and it's just the defendant and the alleged victim. That goes towards his opportunistic nature of doing this.

40

¶76 "Because other acts evidence is inherently relevant to prove character and therefore a propensity to behave accordingly, 'the real issue is whether the other act is relevant to anything else.'" Payano, 320 Wis. 2d 348, ¶67 (citing Blinka, supra, § 404.6, at 181) (emphasis removed). "This second prong is significantly more demanding than the first prong but still does not present a high hurdle for the proponent of the other-acts evidence." Marinez, 331 Wis. 2d 568, ¶33.

¶77 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01 (2011-12). There are two parts to a relevancy analysis: first, "whether the evidence relates to a fact or proposition that is of consequence to the determination of the action," and second, "whether the evidence has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." Sullivan, 216 Wis. 2d at 785-86. "The key is relevance: What is it being offered to prove, and does it have any tendency to make that proposition more or less likely?" Blinka, supra, § 404.6, at 174-75.

¶78 In answering the first question——whether the evidence is offered in relation to any fact or proposition that is of consequence to the determination of the action——"the court must focus its attention on the pleadings and contested issues in the

case."   Payano, 320 Wis. 2d 348, ¶69 (citing Blinka supra, § 404.6, at 181.)

¶79  "The second part of the relevancy analysis illustrates the evidence's probative value, which is also part of the third prong of the Sullivan test."  Marinez, 331 Wis. 2d 568, ¶33. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." Hunt, 263 Wis. 2d 1, ¶64 (citation omitted).  Similarity is demonstrated by showing the "nearness of time, place, and circumstance" between the other-act and the charged crime. State v. Scheidell, 227 Wis. 2d 285, 305, 595 N.W.2d 661 (1999). "The greater the similarity, complexity and distinctiveness of the events, the stronger is the case for admission of the other acts evidence."  Sullivan, 216 Wis. 2d at 787.  It is within a circuit court's discretion to determine whether other-acts evidence is too remote.  Hough v. State, 70 Wis. 2d 807, 814, 235 N.W.2d 534 (1975).

¶80 However, events that are dissimilar or that do not occur near in time may still be relevant to one another. Payano, 320 Wis. 2d 348, ¶70.  "There is no precise point at which a prior act is considered too remote, and remoteness must be considered on a case-by-case basis."  Hunt, 263 Wis. 2d 1, ¶64 (citation omitted).  "Even when evidence may be considered too remote, the evidence is not necessarily rendered irrelevant if the remoteness is balanced by the similarity of the two incidents."  Id. (citing State v. Mink, 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988)).

42

¶81 Turning to the first prong of relevance, each of the purposes for which the circuit court admitted the other-acts evidence relates to a proposition that is of consequence to the determination of the action, namely, whether the jury believed M.C.N.'s account of sexual abuse by Hurley. Indeed, the central issue in dispute at trial was credibility. "'A witness's credibility is always 'consequential' within the meaning of Wis. Stat. § 904.01.'" Marinez, 331 Wis. 2d 568, ¶34 (quoting Blinka, supra, § 401.101, at 98). Like many child sexual assault cases, this case boiled down to a credibility determination. See Blinka, supra, § 404.7, at 217–18 ("Child sexual abuse prosecutions often proceed under three major disabilities: they rely on a single witness who is very young and whose allegations are frequently unsupported by physical evidence.").

¶82 These proof issues provide the rationale for the greater latitude rule. Davidson, 236 Wis. 2d 537, ¶40; State v. Friedrich, 135 Wis. 2d 1, 25, 398 N.W.2d 763 (1987). "Thus, it follows that the greater latitude rule allows for the more liberal admission of other-acts evidence that has a tendency to assist the jury in assessing a child's allegations of sexual assault." Marinez, 331 Wis. 2d 568, ¶34. The circuit court correctly concluded that the assaults committed against J.G. "clearly relate[d] to a fact of proposition of whether it occurred or not" and it was reasonable for the circuit court to conclude that the assaults against J.G. were admissible to allow

43

the jury to better assess M.C.N.'s credibility, which was the central determination.

¶83 Further, the other-acts evidence was relevant to establish Hurley's method of operation and motive to assault M.C.N. See Friedrich, 135 Wis. 2d at 28-29 ("Juries must have all the relevant facts before them. A past history of such a defendant's plans, schemes and motives is relevant. . . . It is this scheme or plan to achieve sexual stimulation or gratification from the young, the most sexually vulnerable in our society, that allows trial courts in the exercise of discretion to admit evidence of past similar acts to show scheme or plan to exploit children.") (emphasis added). As already discussed, Hurley's motive for assaulting M.C.N. was directly related to an element of the charged crime (for the purpose of sexual arousal or gratification), and the J.G. assaults related to that consequential fact. See Davidson, 236 Wis. 2d 537, ¶65 (explaining that the defendant's motive for touching the victim was an element of the crime, and the sexual assault on the prior victim related to that fact of consequence to the determination of the action). Plan, and thus method of operation, is a fact of consequence, and thus is relevant because Hurley denied assaulting M.C.N. The same can certainly be said for motive. Whether or not Hurley had the plan or motive to carry out the assaults against M.C.N. was certainly informed by his assaults against J.G.

¶84 Turning to the second prong of the relevance determination, the circuit court correctly stated that the

44

evidence was probative because of its similarity. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." Id., ¶67 (citation and quotations omitted). The assaults committed against J.G. and M.C.N. were very similar and it was reasonable for the circuit court to conclude that the similarity provided context to Hurley's method of operation. It would have also been reasonable for the circuit court to conclude that the similarity provided context for Hurley's motive. Both victims 1) were similar in age; 2) were members of Hurley's immediate family; 3) lived in the same household as Hurley; 4) were female; 5) were younger than Hurley; 6) were controlled by Hurley and trusting of him; 7) were assaulted via digital penetration; 8) were assaulted in the home and bedroom; 9) were assaulted repeatedly over a period of years; 10) before being assaulted, participated in a stripping "game" initiated by Hurley; and 11) Hurley attempted to dissuade each victim by saying "you're not going to tell mom, are you?".

¶85 Though Hurley was 25 years younger when he assaulted J.G., we do not conclude this is a significant distinction given the many similarities discussed above. Further, even though the other-acts evidence was removed in time, as the circuit court noted, courts have upheld the admission of other-acts evidence that was removed in time due to the similarity between the incidents. See Plymesser, 172 Wis. 2d 583 (upholding the admissibility of 13 year old evidence); Kuntz, 160 Wis. 2d 722 (upholding the admissibility of 16 year old evidence). Given

45

the multitude of similarities outlined above, we conclude that the J.G. assaults were relevant evidence, because they related to a fact of consequence in the case and had strong probative value.

3. Was the Probative Value of the Other-Acts Evidence Substantially Outweighed by the Risk of Unfair Prejudice?

¶86 After discussing the relevance of the other-acts evidence, the circuit court explained:

[a]nd then with respect to the danger of unfair prejudice, clearly this is prejudicial information. If it wasn't, the State wouldn't seek to use it. And I agree that a limiting instruction should be given both before the testimony and again at the close of the case. And I think that [] will be a sound way to make sure that the jury does not conclude that Mr. Hurley is a bad person simply because of that. And the purpose of using this is to establish method of operation and opportunity for doing this.

¶87 Evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Wis. Stat. § 904.03 (2011-12). The probative value of evidence "is a function of its relevance under Wis. Stat. § 904.01." Blinka, supra, § 403.1, at 135. The circuit court is to consider the proponent's need to present this evidence given the context of the entire trial. Id. at 136. "Essentially, probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." Payano, 320 Wis. 2d 348, ¶81. If the probative value is close to or equal to its unfair prejudicial

46

effect, the evidence must be admitted.  State v. Speer, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429.  Prejudice is not based on simple harm to the opposing party's case, but rather "whether the evidence tends to influence the outcome of the case by improper means."  Payano, 320 Wis. 2d 348, ¶87 (quotation omitted).

¶88 "Unfair prejudice [also] results when the proffered evidence . . . appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case."  Sullivan, 216 Wis. 2d at 789-90.  "The circuit court's job is to ensure that the jury will not 'prejudge a defendant's guilt or innocence in an action because of his prior bad act.'"  Payano, 320 Wis. 2d 348, ¶89 (quoting Fishnick, 127 Wis. 2d at 262).

¶89 To limit the possibility that the jury will convict based on "improper means" circuit courts may provide limiting instructions, give cautionary instructions, edit the evidence, or restrict a party's arguments.  Id., ¶99; Hunt, 263 Wis. 2d 1, ¶¶72-73 (explaining that cautionary instructions help to limit any unfair prejudice that may result from other-acts evidence); Sullivan, 216 Wis. 2d at 791.  Limiting instructions substantially mitigate any unfair prejudicial effect.  Hunt, 263 Wis. 2d 1, ¶¶73-75 (concluding limiting instructions in child sexual assault cases were proper, limited any prejudicial effect, and had been approved of in the past).  In some cases,

47

limiting instructions eliminate the potential for unfair prejudice.  Hammer, 236 Wis. 2d 686, ¶36.

¶90  A reviewing court "presume[s] that juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other acts evidence."  Marinez, 331 Wis. 2d 568, ¶41; see also Hunt, 263 Wis. 2d 1, ¶72.  "Because [§ 904.04] provides for exclusion only if the evidence's probative value is substantially outweighed by the danger of unfair prejudice, '[t]he bias, then, is squarely on the side of admissibility.  Close cases should be resolved in favor of admission.'"  Marinez, 331 Wis. 2d 568, ¶41 (quoting Blinka, supra, § 403.1, at 139).

¶91  For the reasons discussed above in the relevancy analysis, the assaults against J.G. were highly probative. While the evidence was certainly prejudicial, the limiting instructions given before J.G.'s testimony and again at the close of the case were a sound way to make sure that the jury did not use the evidence for an improper purpose.  See Marinez, 331 Wis. 2d 568, ¶41.  Here, the circuit court gave two limiting instructions, the first before J.G. testified and the second after closing arguments.

> Evidence will now be presented regarding other conduct
> of the defendant for which the defendant is not on
> trial, specifically evidence will be presented that
> the defendant engaged in sexual intercourse with
> [J.G.].  Sexual intercourse means any intrusion
> however slight by any part of a person's body or of
> any object into the genital or anal opening of

another. Emission of semen is not required. If you find this conduct did occur, you should consider it only on the issues of opportunity and method of operation. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case. The evidence is received on the issues of, first, opportunity, that is whether the defendant had the opportunity to commit the offense charged; and second, method of operation. You may consider this evidence only for the purposes I have described giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged.[22]

¶92 Because we presume that juries comply with properly given limiting and cautionary instructions and because there was no unfair prejudice, the circuit court could reasonably conclude that Hurley did not meet his burden[23] of establishing that the probative value of the other-acts evidence was substantially

---

[22] During opening and closing arguments, the prosecutor was careful to explain that J.G.'s testimony was being admitted only to show Hurley's opportunity and method of operation.

[23] See Marinez, 331 Wis. 2d 568, ¶19 ("Once the proponent of the other-acts evidence establishes the first two prongs of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice.").

49

outweighed by the danger of unfair prejudice.[24] Simply put, the circuit court's decision regarding the prejudicial effect was <u>not</u> a decision that no reasonable judge could make.

¶93 Given that the evidence was admissible for a proper purpose, was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice, the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence.

## C. The Circuit Court Erroneously Exercised its Discretion in Granting a New Trial in the Interest of Justice.

¶94 Finally, we consider whether the circuit court erroneously exercised its discretion in granting a new trial in

---

[24] <u>State v. McGowan</u>, 2006 WI App 80, 291 Wis. 2d 212, 715 N.W.2d 631, which the court of appeals used to reach the opposite conclusion, is distinguishable. In <u>McGowan</u>, the court of appeals concluded that McGowan's assault of a 5 year old female cousin when he was 10 years old did not provide evidence of McGowan's motive to assault a 10 year old cousin when McGowan was 18. We agree with the State in distinguishing <u>McGowan</u> as McGowan was only 10 years old when he committed the other-act, while Hurley was between the ages of 12 and 14 when he assaulted J.G. Further, the result in <u>McGowan</u> was driven by the difference in the nature of the two sets of acts, and the horrid nature of urinating in a child's mouth. <u>Id.</u>, ¶¶20, 23. In contrast, Hurley was 14 years old when he stopped assaulting J.G., much older than McGowan who was 10 years old at the time of the other-act. Further, both sets of assaults committed by Hurley were repeated in nature, contrasted with the single other-act in <u>McGowan</u>. As the circuit court explained: "what distinguishes <u>McGowan</u> from this case, quite frankly, is they were talking about a single incident that had occurred some time previously, which is completely different from what we have in this case where [J.G.] is alleging that these acts occurred for quite a long time, perhaps a number of years."

the interest of justice and conclude that it did. The circuit court erroneously exercised its discretion because it did not apply accepted legal principles to the facts in the record in explaining how the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" State v. Mayo, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115 (quoting Davidson, 236 Wis. 2d 537, ¶88).

¶95 A "prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors." State v. Draize, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979). The prosecutor should aim to "analyze the evidence and present facts with a reasonable interpretation to aid the jury in calmly and reasonably drawing just inferences and arriving at a just conclusion upon the main or controlling questions." Id. However, "[c]ounsel is allowed considerable latitude in closing arguments," and is permitted to draw any reasonable inference from the evidence. State v. Burns, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166 (citing Draize, 88 Wis. 2d at 454); State v. Nemoir, 62 Wis. 2d 206, 213 n.9, 214 N.W.2d 297 (1974).

¶96 "When a defendant alleges that a prosecutor's statements constituted misconduct, the test we apply is whether the statements so infected the trial with unfairness as to make the resulting conviction a denial of due process." Davidson, 236 Wis. 2d 537, ¶88. "Even if there are improper statements by a prosecutor, the statements alone will not be cause to overturn a conviction. Rather, the statements must be looked at in

51

context of the entire trial." Mayo, 301 Wis. 2d 642, ¶43; see also United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

¶97 The circuit court in the instant case erroneously exercised its discretion as it misapplied the holding of State v. Weiss, 2008 WI App 72, 312 Wis. 2d 382, 752 N.W.2d 372. In Weiss, the defendant was charged with two counts of sexual assault of a child under the age of 16. Id., ¶2. Weiss testified that he verbally told the police that he did not commit the assaults, but did not include that denial in his written statements. Id., ¶4. Two police reports stated that Weiss had verbally denied the accusations. Id., ¶1. During closing argument, the prosecutor argued that the first and only time the defendant had denied committing the assaults was during his oral testimony. Id., ¶5. On ten occasions during closing and rebuttal the prosecutor remarked that Weiss did not deny assaulting the victim until trial. Id., ¶¶5-7.

¶98 In granting a new trial in the interest of justice, the Weiss court explained that the prosecutor "was asking the jury to disbelieve Weiss's statement that he had verbally denied the crime to the police." Id., ¶15. The Weiss court explained:

> [The prosecutor] knew better. She had the two police
> reports saying otherwise. . . . We point out once

52

more, because this is important: the State concedes that the prosecutor's argument, asserting that Weiss never denied the crime, implicitly including verbal denials, was incorrect. The importance of what we are about to say cannot be underscored enough. Prosecutors may not ask jurors to draw inferences that they know or should know are not true. That is what occurred here and it is improper.

Id.

¶99 At trial, Hurley testified in his own defense. On direct examination his attorney asked: "Now, [J.G.] testified that she was assaulted when she believed she was around eight years old. Do you recall having an encounter with [J.G.] when she was around eight?" Hurley answered: "No." His attorney then asked: "Do you recall any of the allegations [J.G.] brought up here today?" Hurley answered: "No, I do not."

¶100 During his closing argument the assistant district attorney stated "[w]hen the defendant testified, he was asked by his—by the attorney regarding [J.G.] he said well, do you recall any of these incidents with [J.G.] ever happening? And his answer was no. The question wasn't did you do this or not, it was do you recall? That's different than 'it didn't happen.'" The assistant district attorney and the defense attorney had in their possession a police report which stated that on September 26, 2010, J.G. called Hurley and discussed the assaults he committed against her, which Hurley denied.

¶101 The circuit court concluded that the application of Weiss required a new trial. The circuit court found the prosecutor's comments were designed to have the jury draw the inference that Hurley had not previously denied that the sexual

53

assaults described by J.G. occurred, and that Hurley could only not recall whether he engaged in the sexual contact with his sister. The circuit court further found that this inference was inaccurate and that the prosecutor knew that Hurley had previously denied J.G.'s allegations when confronted by her. The circuit court explained that the case largely boiled down to a credibility determination and that the prosecutor's remarks were intended to undermine the credibility of the defendant.

¶102 However, the circuit court did not apply accepted legal principles in that it misapplied Weiss. In Weiss there were at least ten separate comments by the prosecutor relating to the denial during closing and rebuttal. Id., ¶¶5, 7. Here the prosecutor made two very brief remarks and did not dwell on the defendant's testimony. Further, the inference that the circuit court thought the prosecutor was asking the jury to draw is unfounded. The circuit court thought the prosecutor was asking the jury to draw the inference that Hurley had never denied assaulting J.G., and that he only could not recall whether it had happened. The reasonable inference the prosecutor was arguing was that Hurley had not been asked by his trial counsel whether he assaulted J.G. (and Hurley did not volunteer a denial of J.G.'s allegations) because Hurley believed it was possible he had assaulted her, but could not recall having done so. The prosecutor did not say "he has never denied the assault before today" as the prosecutor did in Weiss, but instead stated that Hurley could not recall the assault which is different from "it didn't happen." The prosecutor did

54

not ask the jury to draw an inference that he knew or should have known was untrue. The prosecutor merely commented on Hurley's testimony at trial, appropriately held him to that testimony, and confined his remark to the reasonable inference discussed above.

¶103 Finally, in Weiss the defendant denied assaulting the victim, but here Hurley denied assaulting J.G., the other-acts victim. Because Hurley's denial did not go to the heart of the case, whether or not he assaulted the victim for which he was on trial, even if the prosecutor's remarks were improper, which we do not conclude, they did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. "Even if there are improper statements by a prosecutor, the statements alone will not be cause to overturn a conviction. Rather, the statements must be looked at in context of the entire trial." Mayo, 301 Wis. 2d 642, ¶43. Noting that Hurley could not recall whether the assaults occurred is in fact different than the assaults did not occur. Had the prosecutor argued that Hurley had never denied the assaults, then, given the credibility contest, those remarks may have infected the trial with unfairness. But that was not the case.

¶104 The prosecutor's comments were brief, fair, and did not ask the jury to draw an inference that the prosecutor knew or should have known was false. Therefore, the circuit court misapplied Weiss in reaching its conclusion and thus the court erroneously exercised its discretion in granting a new trial.

IV. CONCLUSION

55

¶105 First, we hold that the amended complaint and information provided adequate notice and thus did not violate Hurley's due process right to plead and prepare a defense. Second, we hold that the circuit court did not erroneously exercise its discretion in admitting the other-acts evidence. Finally, we hold that the circuit court did erroneously exercise its discretion in granting a new trial in the interest of justice. We therefore reverse the court of appeals and remand to the circuit court with the instruction that the judgment of conviction be reinstated.

*By the Court.*—Reversed and cause remanded to the circuit court with the instruction to reinstate the judgment of conviction.

¶106 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* I agree with the decision of the court of appeals on the issue of the other-acts evidence.[1] I, like the court of appeals, conclude that the circuit court erroneously exercised its discretion in admitting the State's other-acts evidence.

¶107 The admissibility of other-acts evidence is governed by Wis. Stat. § 904.04(2). Other-acts evidence is not admissible "to prove the character of a person in order to show that the person acted in conformity therewith" or to show that the defendant has a propensity to commit crimes.[2] Other-acts evidence introduced for a different purpose is admissible so long as the evidence is relevant to a permissible purpose and its probative value is not substantially outweighed by the danger of unfair prejudice.[3]

¶108 I agree with the court of appeals that the other-acts evidence introduced by the State fails each prong of the three-prong analysis set forth in State v. Sullivan, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998).[4] The State offered other-acts evidence in order to show that the defendant is a bad person

---

[1] State v. Hurley, No. 2013AP558-CR, unpublished slip op., at 23-24 (Wis. Ct. App. May 6, 2014).

[2] State v. Marinez, 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399.

[3] Id.

[4] The three-prong test set forth in State v. Sullivan, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998), is discussed in ¶57 of the majority opinion.

with a propensity to sexually assault children. The State sought to persuade the jury, in violation of Wis. Stat. § 904.04(2)(a), that the assaults alleged in the State's complaint were committed by the defendant in conformity with his criminal character and propensity to sexually assault children.

¶109 If the State's other-acts evidence is relevant to show more than the defendant's criminal character or propensity to sexually assault children (and it is not), its probative value is substantially outweighed by the danger of unfair prejudice.[5] Evidence that the defendant "committed repeated acts of incest against his sister was likely to arouse the jury's sense of horror and provoke its instinct to punish."[6] The limiting instructions provided by the circuit court did not, in my view, cure the unfair prejudice and thus "do not sway this balance . . . ."[7]

¶110 An erroneous exercise of discretion in admitting the State's other-acts evidence does not necessarily lead to a new trial.[8] Rather, this court must determine whether the error was harmless.[9]

---

[5] See Wis. Stat. § 904.03.

[6] Hurley, No. 2013AP558-CR, unpublished slip op., at 23.

[7] Marinez, 331 Wis. 2d 568, ¶77.

[8] Martindale v. Ripp, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698.

[9] Id.

¶111 In the instant case, the State properly conceded at the court of appeals that if its other-acts evidence was erroneously admitted, the error was not harmless.[10] The State does not assert harmless error in its brief before this court.[11]

¶112 I agree with the court of appeals that the error was not harmless and would therefore grant the defendant a new trial.

¶113 By denying the defendant relief in the instant case, the majority opinion adds to the growing body of case law whittling away at the protections afforded to defendants by Wis. Stat. § 904.04(2). As Justice Bradley wrote over a decade ago:

> Rather than endeavoring to stretch beyond repair the definitions of the acceptable purposes [for other-acts evidence under Wis. Stat. § 904.04(2)(a)], the majority should simply lay all its cards on the table and acknowledge that it is sanctioning the blanket use of propensity evidence in child sexual assault cases. [Instead], the majority maintains its refuge under the cloak of the very statute it simultaneously erodes. . . .[12]

¶114 For the reasons set forth, I dissent.

¶115 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[10] Brief (in Court of Appeals) of the State as Appellant and Cross-Respondent at 34.

[11] Brief (in Supreme Court) of the State as Plaintiff-Appellant-Cross-Respondent-Petitioner at 44 n.8.

[12] State v. Davidson, 2000 WI 91, ¶109, 236 Wis. 2d 537, 613 N.W.2d 606 (Bradley, J., dissenting).