COURT OF APPEALS
DECISION
DATED AND FILED

January 7, 2021

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2020AP528-CR**
**2020AP529-CR**

Cir. Ct. Nos.  **2016CF2313**
**2016CF2497**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

MISTER M. S. GIBSON,

    DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. In these consolidated appeals, Mister Gibson appeals judgments of conviction entered by the Dane County Circuit Court for two counts of second degree sexual assault of a child under the age of sixteen, contrary to WIS. STAT. § 948.02(2) (2003-04, 2005-06, and 2007-08), one count of repeated first degree sexual assault of the same child, contrary to WIS. STAT. § 948.025(1)(a) (2003-04, 2005-06, and 2007-08), and one count of sexual assault of a child, contrary to § 948.02(1) (2003-04, 2005-06, and 2007-08).[1]   Gibson argues that the circuit court erred in denying his motion to dismiss all of these counts because the length of the charging period alleged for each offense deprived him of his due process right to prepare an adequate defense.  We affirm.

## BACKGROUND

¶2    In two criminal cases, Gibson was accused of sexual assaults of three children.

¶3    In case No. 2016CF2313, an amended complaint filed in November 2016 set forth the following pertinent allegations.

¶4    In October 2016, Madison Police Department Detective Kathleen Riley interviewed A and B.[2]  A and B are Gibson's nieces.  Each victim informed Riley that she had been sexually assaulted by Gibson at times when each slept

---

[1]  The offenses were alleged to have been committed by Gibson over periods of time that were covered by different versions of the Wisconsin Statutes for those offenses.  However, no changes to the applicable statutes are pertinent to any issue raised on appeal.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Pursuant to WIS. STAT. RULE 809.86(4), we use a letter of the alphabet in place of each victim's name.

overnight at their grandmother's house. At the time of the assaults, Gibson lived with A and B's grandmother. Gibson was born on September 15, 1990.

¶5 A, born in 1999, described to Riley two separate acts of sexual assault by Gibson. A recounted the first charged act as follows:

> [W]hile [A] was in first grade, at her grandmother's house [located] near Leopold Elementary School, Gibson sexually assaulted her in his bedroom…. Gibson asked [A] if she wanted candy and when she said she did, he replied, "You gotta do me a favor and I'll give you candy." Gibson pulled down his pants and leaned back on his bed. [A] said that she pulled her own pants down and that Gibson helped. She recalled that she and Gibson were both standing on the floor and then he told her to bend over. [A] said that Gibson spat on his hand and put it on his "area," referring to Gibson's penis, continuing, "And then at that point he was like rubbing it on my private area, rubbing it against it." … At first, [A] said that was all she remembered. She then later said [to Riley], that, "It hurt. It was hurting. I was moving away from him. He would grab my arm and pull me back closer to where he was.... He was trying to … like he was trying to put it inside my areas."

¶6 Based on records obtained from a municipal public housing authority, as corroborated by A's statement regarding the general location of the house, Detective Riley confirmed that A and B's grandmother lived at an address in Madison, which is given in the amended complaint, from March 17, 2005, until December 20, 2005.

¶7 Based on that account from A, Gibson was charged with having sexual contact with a child under the age of sixteen, A, "between March 17, 2005 and December 20, 2005." During that period, A was five or six years old and Gibson was fourteen or fifteen years old.

¶8 A described the second charged act as follows:

3

> [Gibson] took [A] and one of her sister[]s into a bathroom at her grandmother's residence [a different residence than the residence in which the other charged act occurred]. [A] described the bathroom as having a marble counter and an orange light by the door above the mirror…. Gibson told [A] to open her mouth and pulled out his penis. When she said she could not do that, he told her, "You have to." Gibson said, "Just this last thing and we'll be done." … [A] said that Gibson's penis did touch her mouth and go into it…. She also remembered moving around as Gibson tried to put his penis into [what she described as] her butt because it hurt.

¶9 Based on records obtained from the housing authority, as corroborated by A's statement regarding her grandmother's residence at that time, Detective Riley confirmed that A and B's grandmother lived at an address in Madison, given in the amended complaint, from December 21, 2005, until September 24, 2009.

¶10 Based on that account from A, Gibson was charged with having sexual contact with a child under the age of 16, A, "between December 21, 2005 and September 1, 2009." During that period, A was between six years old and nine years old, and Gibson was between fifteen years old and eighteen years old.

¶11 B, born in 2001, told Riley that "when she was younger she would sleep at her grandmother's residence a lot and that 'every other night' Gibson would touch her." B stated that the first time Gibson assaulted her he "[held] her down and she struggled but could not move." B stated that she was "young" and that "[a]ll [she'd] do is cry because [she] knew [she] couldn't do anything." "She remembered Gibson placing his hand in her pants and rubbing her 'down there.' Later during her interview, [B] circled a diagram of the female body indicating that was where her vagina was…. She said that the assaults were the same, 'He would do a routine. It was always the same.'" B described one residence where the assaults happened as "a house with an upstairs and a downstairs with a patio

4

that was next to a drainage basin." From records of the housing authority, as corroborated by B's description of her grandmother's residence at the relevant times, Detective Riley confirmed this was the same residence where the second assault of A by Gibson occurred.

¶12 As a result of that account from B, Gibson was charged with "repeated sexual assaults involving the same child, [B] … where at least three of the assaults were violations of [WIS. STAT. §] 948.02(1)" "between December 21, 2005 and September 1, 2009." During that period, B was between four and eight years old, and Gibson was between fifteen and eighteen years old.

¶13 A and B's mother confirmed that A and B stopped going to their grandmother's house in 2008 or 2009.

¶14 In Dane County Circuit Court case No. 2016CF2497, a criminal complaint was filed in December 2016 charging Gibson with one count of sexual assault of a child, C, under the age of thirteen "on or about December 21, 2005 through September 24, 2009." C, Gibson's nephew, was born in 1997. The complaint set forth the following pertinent allegations.

¶15 In December 2016, C informed Detective Riley that when C "was at his grandmother's house, which [C] described as 'on the west side, on the circle' his uncle, Gibson, had assaulted him." Based on records from the housing authority, as corroborated by C's statement regarding the general location of that house, Detective Riley determined that the assault occurred at the same residence as the second assault of A and the assaults of B. During that time period, C was between the ages of eight and twelve and Gibson was between fifteen and eighteen years old.

¶16    "[C] stated he was asleep, positioned on his stomach, and when he awoke Gibson was behind him with his pants down on top of him. [C] stated, 'He was trying to freak on me'" and that "Gibson's penis touched [C's] butt." C stated he asked Gibson, "'What are you doing?' and Gibson responded, 'Shh. Be quiet, be quiet.'" "[C] stated Gibson pulled down his pants and underwear and Gibson's private parts touched his butt. [C] stated he was scared by this, and did not know what to do." Gibson told C: "'Don't tell Grandma' and 'you better not say anything.'" "[C] explained that when he slept at [C's grandmother's] home, it was boys in the basement and the girls would sleep upstairs. [C] stated the basement was always pitch black and that he was terrified when he slept down there. [C] stated he would physically hide under his covers at night." "Gibson later bribed [C] to not tell [C's grandmother] about the assault" by buying C a cellular phone that C wanted.

¶17    In April 2017, Gibson filed motions in the circuit court arguing that the charges against him in both cases must be dismissed because the complaints[3] failed to allege time frames for the alleged offenses that were sufficiently definite to provide him with an opportunity to prepare an adequate defense. In a written decision, the circuit court denied Gibson's motions.

---

[3] For ease of reading, throughout the remainder of this opinion, we will refer to the amended complaint in case No. 2016CF2313 and the complaint in case No. 2016CF2497 collectively as "the complaints."

6

¶18    The two cases were joined for trial and were tried before a jury. The jury found Gibson guilty of all three charges. Gibson appeals.[4]

¶19    We will mention other material facts in our discussion.

## DISCUSSION

¶20    As noted, the issue in this appeal is whether the charging periods in the complaints were so expansive that Gibson's due process rights were violated because the lengthy charging period deprived him of the ability to prepare an adequate defense. We begin by setting forth governing principles and our standard of review.

### I.  Governing Principles and Standard of Review.

¶21    A defendant has a due process right, guaranteed by the Sixth Amendment to the United States Constitution,[5] to both fair notice of the charges against him or her, and a fair opportunity to defend against those charges. *See State v. Fawcett*, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988). In order to satisfy constitutional requirements, the criminal complaint, which is a self-contained charge, must "under the totality of the circumstances ... allege facts such

---

[4] Postconviction, Gibson argued in the circuit court that joinder of the cases was improper and that other acts evidence should not have been admitted into evidence. Gibson does not renew either argument on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

[5] The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI.

7

that the defendant can … prepare a defense."[6]  *State v. Hurley*, 2015 WI 35, ¶¶26, 32, 361 Wis. 2d 529, 861 N.W.2d 174 (quoting *State v. Kempainen*, 2015 WI 32, ¶36, 361 Wis. 2d 450, 862 N.W.2d 587); *see Fawcett*, 145 Wis. 2d at 250; *Holesome v. State*, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968).  Allegations of fact in a complaint are constitutionally sufficient if the allegations inform the defendant of the charges against him or her, as well as the underlying facts constituting the offense, including the time frame in which the crime allegedly occurred.[7]  *See Fawcett*, 145 Wis. 2d at 253.

¶22     In child sexual assault cases, a "more flexible application of [the] notice requirements is required and permitted," and under this more flexible standard the complaint need not set forth precise allegations regarding the date the child sexual assault was committed.  *Hurley*, 361 Wis. 2d 529, ¶34 (quoting *Fawcett*, 145 Wis. 2d at 254).  The lack of specificity "of a child's memory [regarding dates of an alleged sexual assault] more properly go[es] to the credibility of the witness and the weight of the testimony, rather than to the

_____

[6] Sufficient notice of the charges also requires adequate information to allow a defendant to enter a plea to the charge and also for a later determination of whether conviction or acquittal would be a bar to another prosecution.  *State v. Fawcett*, 145 Wis. 2d 244, 251, 426 N.W.2d 91 (Ct. App. 1988); *State v. Kempainen*, 2015 WI 32, ¶¶17-19, 361 Wis. 2d 450, 862 N.W.2d 587.  Here, however, Gibson argues only that the complaints were not sufficient to give him the opportunity to prepare a defense to the charges.

[7] As our supreme court has explained, and the parties here implicitly recognize, we look to the criminal complaints regarding the factual allegations that apply in this context.  *See State v. Hurley*, 2015 WI 35, ¶9 n.5, 361 Wis. 2d 529, 861 N.W.2d 174.  It is the information in a criminal case that provides the notice of the charge or charges the defendant must defend against at trial.  *See generally id.*  However, it is also true that, in evaluating his or her options and in potentially defending himself or herself at trial, a defendant has the benefit of seeing the factual allegations that must have been stated in the criminal complaint to establish probable cause based on the elements of the crime or crimes that are ultimately charged in the information.  *See id.*  Because the State typically does not include factual allegations in an information, when discussing the sufficiency of the factual allegations against a defendant, the focus is on the facts alleged in the complaint that pertain to the respective charges in the information.  *See id.*

legality of the prosecution ...." *Fawcett*, 145 Wis. 2d at 254. In addition, "the date of the commission of the crime is not a material element of the [child sexual assault] offense." *Hurley*, 361 Wis. 2d 529, ¶34 (citing *Fawcett*, 145 Wis. 2d at 250); *see* WIS. STAT. § 948.02(1) and (2) (proof of the exact date is not required).

¶23 This court has summarized the competing aims regarding sufficiency of notice of child sexual assault allegations. "A person should not be able to escape punishment for such a ... crime because he [or she] has chosen to [sexually assault] an infant too young to testify clearly as to the time and details of such ... activity." *State v. Sirisun*, 90 Wis. 2d 58, 65 n.4, 279 N.W.2d 484 (Ct. App. 1979) (citing *State v. Rankin*, 181 N.W.2d 169, 172 (Iowa 1970)). "However, no matter how abhorrent the conduct may be, a defendant's due process [rights] ... may not be ignored or trivialized." *Fawcett*, 145 Wis. 2d at 250.

¶24 In *Fawcett*, we adopted a seven-factor test a court may use to determine whether the charging period delineated in a complaint alleging sexual assault of a child provides adequate notice of the charges. *See id.* at 253; *see also Hurley*, 361 Wis. 2d 529, ¶35. We are to apply this test to pertinent allegations made in the complaints. *See Hurley*, 361 Wis. 2d 529, ¶¶26-27, 42-53; *see also Kempainen*, 361 Wis. 2d 450, ¶¶19-20, 32-41. These factors are:

> (1) The age and intelligence of the victim and other witnesses;
>
> (2) The surrounding circumstances;
>
> (3) The nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately;
>
> (4) The length of the alleged period of time in relation to the number of individual criminal acts alleged;

(5) The passage of time between the alleged offense period and the defendant's arrest;

(6) The duration between the alleged offense period and the date of the filing of the complaint; and

(7) The ability of the victim or complaining witness to identify the date and time of the alleged offense.

*Fawcett*, 145 Wis. 2d at 253. No single *Fawcett* factor is dispositive, and not every factor will necessarily be present in each case. *Kempainen*, 361 Wis. 2d 450, ¶4.[8]

¶25 Whether the charging period alleged in a complaint adequately informs a defendant of the charges against him or her is a question which this court reviews, based on pertinent contents of the criminal complaint, independently of the circuit court's analysis. *Fawcett*, 145 Wis. 2d at 250; *Kempainen*, 361 Wis. 2d 450, ¶16.

## II.  The Complaints Are Constitutionally Sufficient.

¶26 We now consider the seven *Fawcett* factors, and conclude that the charging time periods "provided adequate notice and thus did not violate

---

[8] In addition to the seven *Fawcett* factors, courts "may consider any other relevant factors necessary to determine whether the complaint … 'states an offense to which [the defendant can] … prepare a defense.'" *Kempainen*, 361 Wis. 2d 450, ¶4 (quoting *Holesome v. State*, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968)). However, neither party asserts that any factor other than the above-mentioned factors are germane to our analysis, and we do not ourselves identify any additional factors that appear pertinent in this case.

[Gibson's] due process right to … prepare a defense." *See Kempainen*, 361 Wis. 2d 450, ¶31.[9]

## A. First Factor.

¶27   The first factor, the ages of the victims, weighs in favor of the conclusion that the complaints provided sufficient notice to Gibson.[10]   *See Fawcett*, 145 Wis. 2d at 253.   Gibson concedes as much in briefing in this court when he states:   "Yet in total, the alleged victims' ages argue in favor of [sufficient] notice."

---

[9] The State contends that Gibson's motions to dismiss were untimely and his appeal should be rejected for that reason. WISCONSIN STAT. § 971.31(5)(c) provides: "In felony actions, objections based on the insufficiency of the complaint shall be made prior to the preliminary examination or waiver thereof or be deemed waived." *See also State v. Berg*, 116 Wis. 2d 360, 365, 342 N.W.2d 258 (Ct. App. 1983) ("Challenges to the sufficiency of a complaint must be made prior to the preliminary hearing," and the "[f]ailure to object to a defect in the institution of a criminal proceeding constitutes a waiver [of that defect]."). Gibson waived his preliminary hearings in both cases months before he filed motions to dismiss based on the insufficiency of the complaints. Gibson asserts that, even if his motions challenging the complaints were not timely filed, we should ignore his failure to meet the statutory deadline because the State did not object to the untimeliness of his motions in the circuit court. Essentially, Gibson argues that the State has forfeited the right to raise an objection on appeal to the timeliness of his motions. "Forfeiture is a rule of judicial administration, and whether we apply the rule is a matter addressed to our discretion." *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. Here, based on all of the circumstances, we apply the rule of forfeiture against the State, reject on that ground its argument about the timeliness of Gibson's motion, and accordingly decide the issue raised on the merits.

[10] Our supreme court instructs that the first three factors are "especially important given the nature of child sexual assault cases." *Kempainen*, 361 Wis. 2d 450, ¶29.

The first factor also considers the "intelligence" of the victims. *See Fawcett*, 145 Wis. 2d at 253. However, the complaint does not refer to the intelligence of any victim. Neither party makes an argument about the "intelligence" of any victim but, instead, the parties confine their arguments to the victims' ages and development. In addition, the first factor considers the age and intelligence of "other witnesses." *Id.* Neither party refers to other witnesses in the context of the first factor.

¶28    Victim age is a significant factor in this context because youthfulness naturally bears on the victim's ability or inability to provide details, including the ability or inability to identify dates or the sequence of the assaults. *See Hurley*, 361 Wis. 2d 529, ¶42.  In *Hurley*, the complaint alleged that the defendant sexually assaulted the victim "on three or more occasions 'on and between' 2000 and 2005," when the victim was between the ages of six and eleven.  *See id.*, ¶¶10-11, 42.  Addressing the first factor, our supreme court stated:

> At age six, [the victim] was still a young child.  At this young age it is highly unlikely that she could particularize the dates or the sequences in which the assaults occurred. Even at the age of ten years old, given her young age and intelligence, [the victim] was likely rendered incapable of reporting the incidents or recalling back to the exact date or time period when the assaults began.

*Id.*, ¶42.

¶29    Pertinent to the multiple charged assaults of B by Gibson, the supreme court in *Hurley* stated that a repeated and similar nature of assaults on a victim "could reasonably have led to [the victim's] failure to recall the exact dates and times of the assaults.  A child repeatedly assaulted at such a young age is likely extremely confused and upset, and it is not surprising that she would not take note of the specific date on which the assaults occurred."  *Id.*, ¶43 (internal citation omitted).

¶30    Here, the complaint alleged that A was between the ages of five and nine years old when she was assaulted by Gibson, and that B was between the ages of four and eight years old when she was repeatedly assaulted by Gibson. Following the reasoning in *Hurley*, at those ages, and in the circumstances alleged in the complaints, it is "highly unlikely" that either victim "could particularize the dates or sequences in which the assaults occurred." *Id.*, ¶42.

¶31    The complaint alleged that C was between the ages of eight and twelve when Gibson assaulted him.  Gibson points out that, at the age of twelve, C would be expected to have "better recall of the specific facts of the assaults" than a child of four or five years of age.  Experience suggests that a typical twelve-year-old will be better at recalling and stating dates and details of events than a typical five-year-old.  However, without more, that one generalized observation regarding the upper range of C's age at the time he was assaulted is simply one consideration and is not dispositive.  Moreover, that charging period goes back to when C was eight years old, and it is more likely that he was eight, rather than twelve, years old when the charged assault happened because C remembered being six or seven years old when he was assaulted by Gibson, and housing authority records show that C's grandmother moved to the house where the assault happened when C was eight years old.  Like the victim in *Hurley*, the young age of C rendered it difficult for him to particularize the exact date of the sexual assault by Gibson.  *See id.*, ¶¶42-43; *see also* *Fawcett*, 145 Wis. 2d at 254 ("Child molestation often encompasses a period of time and a pattern of conduct.  As a result, a singular event or date is not likely to stand out in [a] child's mind.").

¶32    The first factor supports the conclusion that the complaints provided Gibson adequate notice of the dates of the assaults.

### B.  Second and Third Factors.[11]

¶33    The second and third factors, the surrounding circumstances and the nature of the offense, including whether the offense is likely to occur at a specific

---

[11] Each of the seven *Fawcett* factors may be considered together with any of the other factors. *See* *Kempainen*, 361 Wis. 2d 450, ¶32.

time or is likely to have been discovered immediately, weigh in favor of the conclusion that the complaints provided sufficient notice to Gibson. *See Fawcett*, 145 Wis. 2d at 253.

> Child sexual assaults are difficult crimes to detect and to prosecute, as typically there are no witnesses except the victim and the perpetrator. *Fawcett*, 145 Wis. 2d at 249 …. Often the child is assaulted by a trusted relative, and does not know whom to turn to for protection. *Id.* The child may have been threatened, or, as is often the case, may harbor a natural reluctance to come forward. *Id.* "These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory." *Id.*

*Kempainen*, 361 Wis. 2d 450, ¶21; *see also Hurley*, 361 Wis. 2d 529, ¶33.

¶34     Here, Gibson was the victims' uncle and lived in their grandmother's house where the assaults occurred, and thus the victims likely saw him as a "trusted relative." *See Kempainen*, 361 Wis. 2d 450, ¶21; *Hurley*, 361 Wis. 2d 529, ¶33.

¶35     Also, the complaints allege that the victims were threatened and had a natural reluctance to report the assaults. Gibson contends that we should interpret the allegations in the complaints as reflecting that his "coercion" of the three victims was "minimal," but we interpret the complaints' allegations differently.

¶36     As the summaries of the victims' statements in the complaints given in the Background, above, reveal, there is a reasonable inference from the complaints that, as their uncle, Gibson held a position of some authority over the children and that he took advantage of that authority and of their physical and emotional vulnerability through threats, physical force, pain, and one bribe. Under those circumstances, "it is … understandable that a child may not immediately

14

come forward." *See **Hurley***, 361 Wis. 2d 529, ¶46. Given the victims' ages at the time and the circumstances of the assaults, the delay in each victim reporting the assaults is easily understood.

¶37　Gibson attempts to downplay these circumstances and the nature of the offenses for two reasons. First, Gibson argues that his physical restraint of the victims is not relevant to our analysis because the use of physical force to overcome a victim "is true in many sexual assaults." We fail to see how that fact lessens the fear and intimidation felt by the victims, or the force used by Gibson, in sexually assaulting those victims. Second, Gibson argues that he "was young himself" (Gibson was between the ages of fourteen and nineteen when each of the assaults occurred), and that "[t]here is no indication that he had any right to supervise, instruct, or punish" the children and therefore "nothing [he did] approach[ed] parental authority" of the children. This assertion also fails. A and B were as young as four and five when the assaults began. There existed a substantial age difference between Gibson and A and B, which Gibson acknowledges would have given him stature in their eyes. Although C was older than A and B when the assault against him occurred, we agree with the State that the smaller relative age difference between C and Gibson does not change the fact that Gibson, as C's older uncle, would have an apparent position of authority over C.

¶38　The nature and the circumstances of Gibson's offenses made it unlikely those assaults would have been discovered immediately, and the second and third factors support the conclusion that the complaints gave Gibson sufficient notice.

## C. Fourth Factor.

¶39     The fourth factor concerns the length of the alleged period of time in relation to the number of individual criminal acts alleged. *Fawcett*, 145 Wis. 2d at 253.  For clarity, we repeat the individual counts charged and the charging periods. Three counts were charged in case No. 2016CF2313.  Count one alleged one criminal act by Gibson against A that occurred during a nine-month time span. Count two alleged one criminal act by Gibson against A that occurred during a nearly four-year time span.  Count three alleged multiple criminal acts by Gibson against B that occurred over a nearly four-year time span.  One count was charged in case No. 2016CF2497.  That count alleged a single criminal act by Gibson against C that occurred during a nearly four-year time span.

¶40     Regarding the nine-month charging period in count one of case No. 2016CF2313, Gibson's sole argument is that this charging period is longer than the charging periods in *Fawcett* and *Kempainen* and, as a result, there was a due process violation.[12]  Gibson's argument that he was deprived of due process

---

[12]  For this argument, Gibson also relies on *State v. R.A.R.*, 148 Wis. 2d 408, 435 N.W.2d 315 (Ct. App. 1988).  However, *R.A.R.* was overruled in part by our supreme court.  *See Kempainen*, 361 Wis. 2d 450, ¶¶25-29.  In *R.A.R.*, this court concluded that a court should consider the first three *Fawcett* factors only in situations in which the defendant contends that the State could have obtained a more definite charging period through diligent efforts.  *R.A.R.*, 148 Wis. 2d at 411.  The supreme court stated in *Kempainen* that *R.A.R.*'s limitation on the consideration of the *Fawcett* factors was erroneous and overruled *R.A.R.* "[t]o the extent that *R.A.R.* conflicts with the holding in *Fawcett*, and thus limits the factors a court may consider when applying the *Holesome* test." *Kempainen*, 361 Wis. 2d 450, ¶¶26, 28.  In *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶44, 326 Wis. 2d 729, 786 N.W.2d 78, the supreme court addressed the precedential value of a court of appeals decision when the supreme court overrules part of that decision in the context of an opinion in a separate appeal.  The court held in *Blum* that "a court of appeals decision expressly overruled by this court no longer retains any precedential value, unless this court expressly states that it is leaving portions of the court of appeals decision intact."  *Id.*, ¶56. Although the supreme court in *Kempainen* may suggest implicitly that those portions of *R.A.R.* that do not conflict with *Fawcett* were not overruled, the supreme court did not "expressly
(continued)

regarding the other three counts that have nearly four-year charging periods is only that, although these charging periods are less than the five-year charging period approved in *Hurley*, that appeal involved a greater number of acts than were charged in the present cases and the acts in *Hurley* were committed by a parental figure.

¶41    We are not persuaded.  The seven *Fawcett* factors are fact-intensive inquires, necessarily dependent on details unique to the allegations contained in a criminal complaint in each case.  *See Kempainen*, 361 Wis. 2d 450, ¶28 (explaining courts are required to consider the totality of the circumstances). Gibson makes no effort to compare the allegations in the present case with the allegations in the cases that he relies on.  Gibson fails to explain how or why, in the context of this factor, the broadness of these charging time periods deprived him of sufficient notice such that he was unable to prepare an adequate defense. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to consider conclusory and undeveloped assertions).  Accordingly, Gibson's conclusory assertions regarding this factor give us insufficient reason to reverse the order of the circuit court.

### D.  Fifth and Sixth Factors.

¶42    Factors five and six address the passage of time between the alleged offense period and the defendant's arrest, and the passage of time between the

---

state[]," that it was leaving portions of *R.A.R.* intact.  *See id.*    Thus, *R.A.R.* retains no precedential value. *See id.*

Further, because Gibson's reliance on *R.A.R.* has no meaningful effect on our analysis, we disregard Gibson's erroneous reliance on that case.

17

alleged offense period and the date of the filing of the complaint. *See Fawcett*, 145 Wis. 2d at 253. For context, we repeat that the charging periods at issue ended in 2005 and 2009. In each case, after the victims reported the assaults to police in October and December of 2016, Gibson was arrested and charged within one month.

¶43 "[T]hese factors address the problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations." *State v. Miller*, 2002 WI App 197, ¶35, 257 Wis. 2d 124, 650 N.W.2d 850. In *Hurley*, our supreme court rejected "a purely mathematical approach" to determining the overall reasonableness of the charging period. *See Hurley*, 361 Wis. 2d 529, ¶51. That is to say, a defendant cannot simply argue that "too much time has passed to allow for a prosecution." *Id.*, ¶50. "A defendant arguing that factors five and six weigh in his favor must articulate *how* his ability to present a defense has been impaired." *Id.*, ¶51; *see Kempainen*, 361 Wis. 2d 450, ¶39. Gibson argues that the delay between when the offenses were committed and when Gibson was charged impaired his ability to present a defense in two ways.

¶44 First, Gibson contends that the delay prevented him from presenting an alibi defense. However, the *Fawcett* court stated:

> [A]n alibi defense does not change the nature of the charges against the defendant or suddenly incorporate time as a necessary element of the offense.... If we required that a complaint be dismissed for lack of specificity when a defendant indicated a desire to assert an alibi defense, such a holding would create potential for an untenable tactic: a defendant would simply have to interpose an alibi defense in order to escape prosecution once it became apparent that a child victim/witness was confused with respect to the date or other specifics of the alleged criminal event. We decline to adopt such a rule.

*Fawcett*, 145 Wis. 2d at 254 n.3 (internal citation omitted); *see also **Hurley***, 361 Wis. 2d 529, ¶48 and ***Kempainen***, 361 Wis. 2d 450, ¶34 (both quoting this passage favorably).

¶45 In addition, at the time of the assaults, Gibson lived in the house where the assaults occurred and, thus, had continuous access to the victims when they stayed overnight at their grandmother's house. An alibi defense was therefore limited. *See **Kempainen***, 361 Wis. 2d 450, ¶38 (citing ***People v. Jones***, 792 P.2d 643 (Cal. 1990), for the proposition that, when a defendant has had continuous access to a victim, alibi is not a likely defense). Accordingly, we reject Gibson's argument that the delay between the time of the offenses and the filing of the complaints impaired his ability to present an alibi defense.

¶46 Second, Gibson argues that the delay prevented him from investigating the truth of the victims' allegations, and that delay "effectively foreclosed" his ability to investigate the children's demeanors during the charged time periods and how each interacted with Gibson because "[m]emories dim and fade." Gibson asserts that "[t]his type of evidence is foundational to a child sexual assault defense."

¶47 There is no doubt that memories generally fade over time. But, it is not an absolute truth that, in seven to eleven years, memories of witnesses who may provide exculpatory evidence for Gibson are obliterated. In this context, Gibson gives us nothing more than hypotheticals about how the passage of time may have undermined his defense to the charges. However, for these factors, Gibson does not make any showing that, either at the trial or in a statement, any witness who may have had exculpatory information has said that the witness is unable to remember relevant events. For that reason, Gibson has failed to

articulate how his ability to prepare a defense has been impaired by the delay. *See Hurley*, 361 Wis. 2d 529, ¶51 and *Kempainen*, 361 Wis. 2d 450, ¶39.

¶48     Accordingly, we conclude that the fifth and sixth factors weigh in favor of the conclusion that the complaints gave Gibson adequate notice of the charges against him.

### E. Seventh Factor.

¶49     The seventh *Fawcett* factor concerns the ability of the victim to identify the date and time of the alleged offense. *Fawcett*, 145 Wis. 2d at 253. The seventh factor is informed by the first three factors, all of which, as discussed, favor rejection of Gibson's argument. *See Kempainen*, 361 Wis. 2d 450, ¶29.

¶50     Gibson states that this factor is a "mixed picture," and argues only that the details given by the victims do not help him present a defense.

¶51     The charging periods were broad, but this factor alone does not render the complaints constitutionally insufficient. *See id.*, ¶¶4, 42 ("No single factor is dispositive …."). Each victim was unable to offer specific dates of the assaults by Gibson. But, each was able to provide some details, such as the school grades they were in and descriptions of the homes their grandmother was living in at the time of the assaults. In addition, A and B's mother confirmed to police the time when A and B stopped going to their grandmother's house, and Detective Riley was able to confirm the addresses of the houses the victims' grandmother resided in during the charged time periods. As discussed earlier, each victim appeared to give to the best of the victim's ability details of the crimes, including where and when the assaults occurred. Accordingly, the seventh factor supports the conclusion that the complaints gave Gibson sufficient notice.

¶52    In sum, based on our application of the seven *Fawcett* factors, we conclude that the complaints provided constitutionally sufficient notice to satisfy Gibson's due process right to prepare an adequate defense.  Accordingly, the circuit court did not err in denying Gibson's motions to dismiss.

## CONCLUSION

¶53    For the foregoing reasons, the judgments of the circuit court are affirmed.

*By the Court.*—Judgments affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.