COURT OF APPEALS
DECISION
DATED AND FILED

September 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP999-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1059

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KYLE A. MOORE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kyle Moore appeals a judgment of conviction for second-degree recklessly endangering safety and disorderly conduct. Moore contends that the circuit court erred by admitting other-acts evidence at trial and that the evidence was insufficient to sustain the conviction for second-degree recklessly endangering safety. For the reasons explained in this opinion, we reject those contentions. We affirm.

*Background*

¶2 Moore was charged with misdemeanor theft, disorderly conduct, felony intimidation of a victim, and second-degree recklessly endangering safety, all as a repeater and as an act of domestic abuse. The criminal complaint alleged that, in October 2020, police responded to a domestic disturbance reported by Moore's then former girlfriend, A.B.[1] A.B. reported the following to the responding officer. Moore entered A.B.'s residence without her consent and A.B. told him to leave. When Moore refused to leave, A.B. threatened to call the police. Moore responded, "All right, if you're ready to die." He then took A.B.'s phone out of her hands, left her apartment, and got into his car. A.B. also went outside, and partially entered the backseat of Moore's car. Moore looked at A.B. and said, "Oh, you wanna go for a ride? We can go for a ride." He then put the car in reverse and backed out the driveway, while the back door was open and A.B. was only halfway inside the vehicle. A.B. fell out of the vehicle and rolled onto the pavement, scraping her knee.

---

[1] To protect the privacy of the victim, we refer to her as A.B., using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3     Prior to trial, the State moved to admit other-acts evidence of Moore's prior acts of domestic violence against A.B. under the three-prong test for admitting other-acts evidence, *see State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), and the "greater latitude" rule for other-acts evidence in domestic violence cases, *see* WIS. STAT. § 904.04(2)(b)1.  The State argued that the other-acts evidence met the three-prong test for admissibility under *Sullivan* that: (1) the other-acts evidence is offered for a permissible purpose under § 904.04(2)(a); (2) the other-acts evidence is relevant under WIS. STAT. § 904.01; and (3) the probative value of the other-acts evidence is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03.  *See Sullivan*, 216 Wis. 2d at 772-73.

¶4     At issue on appeal is other-acts evidence from two prior criminal cases against Moore involving domestic abuse against A.B., as well as from an incident five days before the day of the charged offenses.[2]  First, the State sought to admit the following facts that formed the basis for a Rock County criminal case against Moore.  In August 2016, Moore was in A.B.'s car when she drove to the hospital where she worked.  A.B. told Moore that she wanted to keep her car at work rather than allow him to take the car during her shift.  Moore responded by grabbing A.B.'s hair and smashing her face into the car's center console.  A.B. tried to call 9-1-1, but Moore broke her phone before she could reach an operator.

---

[2] The State sought to admit evidence from three prior criminal cases against Moore involving domestic abuse against A.B., plus evidence from the incident five days before the day of the charged offenses.  The circuit court granted the State's motion as to two of the prior criminal cases and the incident five days before the day of the charged offenses.  Because the circuit court denied the State's motion as to the third case, we do not discuss the facts of that case in this opinion.

A.B. suffered a lip abrasion, swelling on her mouth, and a scratch on her wrist during that incident.

¶5     Second, the State sought to admit the following facts that formed the basis for a Dane County criminal case against Moore.  In May 2019, Moore approached A.B. at a bowling alley while she was out with friends.  Moore grabbed A.B.'s arms and tried to drag her out of the bowling alley.  One of A.B.'s friends tried to intervene and Moore shoved the friend, breaking off the friend's pinky nail and hyperextending her thumb.

¶6     The State asserted that it offered the other-acts evidence from these two incidents to prove Moore's motive, intent, and lack of mistake or accident in committing the acts charged in this case.  It argued that the prior acts involved similar conduct, and that the evidence of Moore's prior acts of domestic abuse against A.B. was relevant to establish Moore's motive to exercise power and control over A.B. by physically assaulting her.  Moore argued that the evidence of the prior acts was not relevant to the charged offenses and, therefore, not admissible.

¶7     The circuit court determined that, applying the "greater latitude" rule for domestic violence cases:  (1) the other-acts evidence was offered for the permissible purpose of establishing motive; (2) it was "relevant for that permissible purpose of showing motive to control a victim through physical conduct"; and (3) the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

¶8     At the outset of trial, the State moved to admit other-acts evidence regarding the third incident at issue here—specifically, A.B.'s testimony that Moore had punched a hole in A.B.'s wall five days before the day of the offenses

charged in this case. As the State's offer of proof, A.B. testified that, on the day of the charged offenses, Moore was angry because he saw that A.B. had been texting her friends about the hole he punched in her wall five days earlier. The State argued that the evidence was offered to show, and relevant to prove, Moore's motive in taking away A.B.'s phone. Moore argued that the evidence was not relevant to prove any fact at issue at trial. The circuit court determined that the evidence was offered for the proper purpose of showing Moore's motive to exercise control over A.B. through physical conduct, that it was relevant to establish that motive, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

¶9 A.B. at trial testified to the allegations in the criminal complaint, as well as the following additional allegations. When Moore came into her room uninvited, he lay partially on top of her to look at what she was doing on her phone. When Moore saw that she had texted her friends that Moore had punched a hole in her wall several days earlier, he got angry and took her phone out of her hands. A.B. demanded her phone back, but Moore backed away from A.B. while continuing to read through her texts and saying, "All right, [A.B.], you want to fucking play." A.B. told him she was going to call the police, and he responded by asking if she was ready to die.

¶10 A.B. ran out the front door and saw Moore come around from the back of the house. Moore got in his car in the driveway and A.B. stood behind Moore's car, demanding her phone back. Moore drove toward A.B. in reverse, slowly at first, but accelerating as he got closer until A.B. felt she had to move out of the way for her safety. A.B. then opened the back door of the car and sat on half of the seat, and pleaded for her phone back. Moore was angry and screamed at A.B., "[Y]ou want to fucking play. You want to play, we'll play." Moore then

5

sped up in reverse, with A.B.'s leg hanging out of the car and the car door still open. When Moore pulled into the street and shifted into drive, A.B. jumped out of the car and landed on a patch of grass between the sidewalk and the curb, scraping her knee.

¶11 The jury found Moore guilty of second-degree recklessly endangering safety and disorderly conduct, and not guilty of misdemeanor theft and felony intimidation of a victim. The circuit court entered judgments of conviction and sentenced Moore. Moore appeals.

*Standard of Review*

¶12 Moore raises two arguments on appeal: (1) the circuit court erroneously exercised its discretion by admitting other-acts evidence; and (2) the evidence at trial was insufficient to support the jury verdict for second-degree recklessly endangering safety. We review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion. *See State v. Dorsey*, 2018 WI 10, ¶24, 379 Wis. 2d 386, 906 N.W.2d 158. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (quoted source omitted). We review de novo whether the evidence was sufficient to sustain a jury verdict. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

*Discussion*

*Other-Acts Evidence*

¶13 "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). However, other-acts evidence

is admissible if it meets the three-prong test set forth in *Sullivan*: (1) the evidence is offered for a permissible purpose; (2) the evidence is relevant; and (3) the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice by admitting it at trial. *Sullivan*, 216 Wis. 2d at 772-73. Additionally, there is a greater latitude for admitting other-acts evidence in cases involving domestic abuse. Section 904.04(2)(b)1. provides, as pertinent here:

> In a criminal proceeding alleging … domestic abuse, as defined in [WIS. STAT. §] 968.075(1)(a), or alleging an offense that, following a conviction, is subject to the surcharge in [WIS. STAT. §] 973.055, [domestic abuse surcharges,] evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

The greater latitude rule applies to each step of the *Sullivan* analysis. *Dorsey*, 379 Wis. 2d 386, ¶33; *State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399.

¶14     Here, Moore does not dispute that the evidence met the first prong of *Sullivan*, that is, that it was offered for the proper purpose of establishing motive. *See* WIS. STAT. § 904.04(2)(a); *Sullivan*, 216 Wis. 2d at 772 (permissible purposes include proof of motive). However, Moore argues that the evidence did not meet the second and third prongs of *Sullivan*; that is, that the evidence was not relevant and that its probative value was substantially outweighed by the risk of unfair prejudice. We disagree.

*The Second **Sullivan** Prong*

¶15     We conclude that the circuit court properly exercised its discretion by determining that the evidence met the second prong of the *Sullivan* test. The second prong of *Sullivan* requires that the other-acts evidence is relevant. "[T]he

relevance inquiry is two-fold: first, '[t]he evidence must relate to a fact or proposition of consequence'; second, the evidence must have probative value, that is, 'a tendency to make a consequential fact more or less probable than it would be without the evidence.'" *Dorsey*, 379 Wis. 2d 386, ¶44 (quoted source omitted). Other-acts evidence is "of consequence" if it is logically related to an element of the offense; in other words, the other-acts evidence is "of consequence" if, under the substantive law, it is related to "the ultimate facts and links in the chain of inferences that are of consequence to the case." *Sullivan*, 216 Wis. 2d at 786. "An element of a crime constitutes a consequential fact that the State must prove." *Dorsey*, 379 Wis. 2d 386, ¶48 (quoted source omitted). Pertinent here, intent is an element of two of the charges in this case: misdemeanor theft and felony intimidation of a victim.[3] "Motive is relevant to establishing purpose," and "intent" is "having a requisite 'mental purpose.'" *Id.* (quoted source omitted). Thus, "[i]ntent and motive are 'of consequence.'" *Id.*

¶16 "Whether other-acts evidence has probative value asks whether the other acts are similar, that is, whether they are near 'in time, place, and circumstance, to the alleged crime or to the fact or proposition sought to be proved.'" *Id.*, ¶49 (quoted source omitted). Thus, relevancy will depend, in part, on the "similarity between the charged offense and the other act." *State v. Hurley*, 2015 WI 35, ¶79, 361 Wis. 2d 529, 861 N.W.2d 174 (quoted source omitted).

---

[3] *See* WIS. STAT. § 943.20(1)(a) (theft committed by one who "[i]ntentionally takes and carries away … movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property"; WIS. STAT. §§ 940.44, 940.45(3)) (felony intimidation of a victim committed by one who "knowingly and maliciously prevents … another person who has been the victim of any crime … from … causing or seeking the arrest of any person in connection with the victimization," "[w]here the act is accompanied by [a] threat of force").

"The greater the similarity, complexity and distinctiveness of the events, the stronger is the case for admission of the other[-]acts evidence." *Sullivan*, 216 Wis. 2d at 787.

¶17     The circuit court here did not err when it determined that the evidence as to Moore's 2016 and 2019 criminal cases was relevant to show Moore's "motive to control [A.B.] through physical conduct."[4]    The court reasoned that, under the test for relevance articulated in *Sullivan* and *Dorsey*, "while there is a temporal lapse of time between these events, there is the allegation that this relationship continued on again/off again and that [Moore's] behavior was motivated by a desire to physically control [A.B.'s] actions." This was a conclusion that a reasonable judge could reach using a demonstrated, rational process, and was, therefore, a proper exercise of discretion.

¶18     Moore's arguments to the contrary are unavailing. Moore contends that the facts from his 2016 and 2019 criminal cases did not "relate to any fact or proposition of consequence" because his prior criminal cases involved physically assaultive behavior against A.B., while none of the charges in this case included allegations of physical harm. Moore argues that the other-acts evidence that he exercised power and control over A.B. through physically assaultive behavior was not logically related to any of the domestic abuse charges in this case because

---

[4] Moore's relevancy argument under the second prong of *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), is limited to the two items of other-acts evidence that were the subject of the pre-trial motion:  the facts from his 2016 and 2019 criminal cases. That is, he does not argue that the third item of other-acts evidence—the evidence that Moore had punched a hole in A.B.'s wall five days before the present offenses—was not relevant under the second prong of *Sullivan*.

none of the charges here included the type of physical assault at issue in the prior cases.

¶19     In support, Moore argues that the other-acts evidence in this case is distinguishable from the other-acts evidence that was determined to be admissible in *Dorsey*.  Dorsey was charged with four crimes related to his domestic violence towards his then-girlfriend:  strangulation, disorderly conduct, and two counts of battery.  *Dorsey*, 379 Wis. 2d 386, ¶¶2, 7.  Before trial, the State sought to introduce evidence of Dorsey's prior convictions for battery as previous acts of domestic violence.  *Id.*, ¶8.  The circuit court allowed the State to introduce the other-acts evidence of Dorsey's previous acts of physical violence against a former girlfriend, applying the greater latitude rule for admission of the other-acts evidence to the three-prong *Sullivan* analysis.  *Id.*, ¶3.  On appeal, Dorsey argued that WIS. STAT. § 904.04(2)(b)1. "does not afford circuit courts greater latitude to admit other-acts evidence of domestic abuse." *Id.*, ¶26.

¶20     Our supreme court affirmed the circuit court's application of the greater latitude rule to the *Sullivan* analysis and its admission of the other-acts evidence.  *Id.*, ¶5.  The court noted that WIS. STAT. § 904.04(2)(b)1. "allows admission of other-acts evidence with greater latitude under a *Sullivan* analysis." *Id.*  It then determined that the circuit court properly exercised its discretion by admitting evidence of Dorsey's previous acts of domestic abuse because it applied the proper legal standard to the facts to reach a conclusion that a reasonable judge could reach.  *Id.*  Specifically as to the second prong of *Sullivan*, the court determined that the circuit court properly exercised its discretion by determining that, applying the greater latitude rule, the other-acts evidence of "similar" acts was relevant and probative to show Dorsey's "motive to control." *Id.*, ¶¶45-47. The court reasoned that motive and intent were "'of consequence'" because intent

was an element of two of the charged crimes. *Id.*, ¶48 (quoted source omitted). The court further reasoned that "the other acts tend to make the facts of intent and motive more probable because they are similar as to intent and motive," that is, "in both instances, Dorsey became violent when he felt like he was being disrespected or lied to, and he isolated his victims and restricted their movements immediately prior to the assaults." *Id.*, ¶49.

¶21 Moore contends that here, unlike in *Dorsey*, the charges in his prior domestic abuse cases and the charges in this case do not share the element of intent to cause bodily harm. Moore contends that evidence of his prior acts of domestic violence with intent to cause bodily harm are not at all related to the only intent elements in this case: in the misdemeanor theft charge (intent to permanently deprive A.B. of her phone, *see* WIS. STAT. § 943.20(1)(a)), and felony intimidation of a victim (intent to dissuade A.B. from causing Moore's arrest by calling the police, *see* WIS. STAT. §§ 940.44, 940.45(3)). He contends that evidence of his prior acts of physical violence toward A.B. did not make it more or less likely that he took her phone with the intent to permanently deprive her of it. He also contends that his prior acts of physical violence toward A.B. are not similar in time or circumstance to the allegation in this case that, when A.B. threatened to call the police, he took her phone and verbally threatened her by asking if she was ready to die. He argues that the prior acts occurred when Moore and A.B. were in a relationship and living together, while here the acts occurred after they were broken up and living apart.

¶22 Contrary to Moore's assertions, nothing in *Dorsey* indicates that other-acts evidence of prior acts of domestic abuse is relevant *only* if the other-acts offenses and the charged offenses have the same intent element. Rather, *Dorsey* explains that other-acts evidence is "'of consequence'" if "it is logically related to

11

an element of the offense, that is, … under the substantive law, it is related to 'the ultimate facts and links in the chain of inferences that are of consequence to the case.'" *Id.*, ¶48 (quoted source omitted). It explains that "[w]hether other-acts evidence has probative value asks whether the other acts are similar, that is, whether they are near 'in time, place, and circumstance[,] to the alleged crime or to the fact or proposition sought to be proved.'" *Id.*, ¶49 (quoted source omitted).

¶23 Here, the other-acts evidence that Moore previously used physical conduct to control A.B. was relevant to his motive and intent in taking A.B.'s phone and then, when she stated she was going to call the police, threatening her by asking if she was ready to die. To recap, A.B. testified that Moore came into her room uninvited and lay partially on top of her to look at her phone, and then, angry that she was texting her friends that he had punched a hole in her wall, physically took her phone out of her hands. Moore then threatened her when she said she was going to call the police. The other-acts evidence was relevant to show that Moore's motivation in those acts was to physically control A.B., making it more likely that he took her phone with the intent to permanently deprive her of it and that he threatened her to prevent her from reporting him to the police. Thus, the motive evidence was logically related to the intent element that the State was required to prove for the charges of misdemeanor theft and victim intimidation and was probative of that element.[5] In addition, the facts from the 2016 and 2019 cases involved the same victim and were within about four years of the present offenses. "Thus, especially given greater latitude in this domestic abuse case, the

---

[5] That Moore was acquitted of those charges does not alter our analysis as to whether the circuit court properly exercised its discretion in admitting the other-acts evidence.

circuit court did not err in concluding that [Moore's] other acts were relevant to the purposes of intent and motive." *Id.*, ¶51.

*The Third **Sullivan** Prong*

¶24 We conclude that the circuit court properly exercised its discretion by determining that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. *See **Marinez***, 331 Wis. 2d 568, ¶¶19, 41 n.21; *see* WIS. STAT. § 904.03. "Essentially, probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." ***State v. Payano***, 2009 WI 86, ¶81, 320 Wis. 2d 348, 768 N.W.2d 832. "Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means … or otherwise causes a jury to base its decision on something other than the established propositions in the case." ***Sullivan***, 216 Wis. 2d at 789-90.

¶25 Moore contends that the first two items of other-acts evidence were unfairly prejudicial at trial, with the potential to confuse the jury with collateral issues. However, the premise of that argument is Moore's contention, rejected above, that the other-acts evidence was not relevant to establish motive or intent.[6] Further, the danger of unfair prejudice was mitigated by the circuit court's limiting

---

[6] As to the third item of other-acts evidence—the evidence that Moore punched a hole in A.B.'s wall—Moore argues that the State unreasonably delayed in seeking to admit that evidence until the first day of trial. Moore argues that the hole-punching evidence was unfairly prejudicial based on "surprise" and "the cumulative effect of all of the other acts that had been allowed in at that point, and the potential for confusion of the jurors." Moore does not sufficiently develop an argument that the probative value of the hole-punching evidence was substantially outweighed by the danger of unfair prejudice, and we do not consider it further. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

instruction. *See* **Hurley**, 361 Wis. 2d 529, ¶89. Applying the greater latitude rule as required by **Dorsey**, we conclude that Moore has not met his burden to show that the other-acts evidence was inadmissible under the third prong of **Sullivan**.

*Sufficiency of the Evidence*

¶26 Moore argues that the evidence was insufficient to support the jury verdict for second-degree recklessly endangering safety. He argues that there was no evidence at trial that Moore created an unreasonable risk of death or great bodily harm to A.B., or that he was aware that he created that risk. *See* WIS. STAT. § 941.30(2) (second-degree recklessly endangering safety committed by one who "recklessly endangers another's safety"); WIS. STAT. § 939.24 ("recklessly" "means that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk").

¶27 We review the sufficiency of the evidence to support a conviction for whether "the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." **State v. Poellinger**, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We will uphold a conviction "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt." **Id.**

¶28 Moore argues that there was no evidence that Moore knew that A.B. was behind his car when he started reversing toward her. He argues that, even if he was aware that A.B. was behind his car, a reasonable person in Moore's

14

position would have assumed that A.B. would move out of the way.[7]  Moore argues that "backing out of a driveway slow enough for a person to step aside, enter and exit a vehicle does not create" risk of "great bodily harm."  *See* WIS. STAT. § 939.22(14) ("'Great bodily harm' means bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.").

¶29     We reject Moore's arguments for the following reasons, based on our conclusion that the evidence was sufficient to support the jury's verdict.  A.B. and her landlord both testified that A.B. stood directly behind Moore's car in the middle of the day, demanding her phone back, before he started reversing toward her.  A.B. testified that she had her hands on the trunk of Moore's car, and A.B.'s landlord testified that, while behind Moore's car, A.B. was "shouting" at Moore to give her back her phone.  One reasonable inference from that testimony is that Moore saw and heard A.B. and knew she was standing behind his car when he started reversing toward her.  *See **Poellinger***, 153 Wis. 2d at 506-07 ("[W]hen faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law.").

---

[7] Moore also asserts that A.B. committed criminal false imprisonment when she stood behind his car to prevent him from leaving.  *See* WIS. STAT. § 940.30.  Moore argues: "It cannot be the case that one person can attempt to falsely imprison another only to later claim they were placed in harm's way when their subject refused to be so confined."  Moore has not sufficiently developed an argument that, based on this reasoning, the evidence at trial was insufficient to sustain the jury's verdict.  We therefore decline to address it further.  *See **Pettit***, 171 Wis. 2d at 646 (this court generally declines to consider undeveloped arguments).

¶30    A.B. and her landlord further testified that Moore accelerated in reverse toward her, until she moved out of the way and partially entered the back seat of the car. A.B. testified that Moore then screamed, "[Y]ou want to fucking play. You want to play, we'll play," and continued to accelerate in reverse while the back door was still open and she was only half in the car. The jury was entitled to find that Moore's conduct created an unreasonable and substantial risk to A.B. sustaining a serious bodily injury by Moore hitting A.B. with his car or causing her to fall out while the car was accelerating in reverse. When, as here, "any possibility exists" that the jury could have drawn "appropriate inferences" from the evidence presented at trial, we may not overturn the verdict. *See id.* at 507.

    *By the Court.*—Judgment affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.